Christopher Lee Shanks
308 Main Street
#621
Canon City, CO 81212
Pro Se

# UNITED STATES BANKRUPTCY COURT

# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CELSIUS NETWORK LLC, *ET AL.*, | Chapter 11 |
| Debtors[1] | |
| | Case No.: 22-10964 (MG) |
| Christopher Lee Shanks | (Jointly Administered.) |
| Plaintiff | |
| v. | ADV. PRO. NO. 22-_____(MG) |
| CELSIUS NETWORK LLC; CELSIUS KEYFI LLC; CELSIUS LENDING LLC; CELSIUS MINING LLC; CELSIUS NETWORK INC.; CELSIUS NETWORK LIMITED; CELSIUS NETWORKS LENDING LLC; and CELSIUS US HOLDING LLC. | |
| Defendants | |

## **INTERPRETATION OF THIS ADVERSARY PROCEEDING**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

As I am a Pro Se filer, and I do not understand the law as well as a lawyer would, and I ask that you do as the Supreme Court of The United States (hereinafter "SCOTUS") said: "*a pro se complaint, 'however inartful pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers' and can only be dismissed for failure to state a claim if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."* Id., at 520, 521, quoting Conley v. Gibson, 355 U.S. 41,45 46 (1957)." Rule 8 provides that "*pleadings shall be so construed as to do substantial justice.*" As SCOTUS stated: "*We frequently have stated that pro se pleadings are to be given a liberal construction. Baldwin County Welcome Center v. Brown.*". It is well established that a court is ordinarily obligated to afford a special solicitude to pro se litigants. See Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474-75 (2d Cir.2006); see also McDonald v. Head Criminal Court Supervisor Officer, 850 F.2d 121, 124 (2d Cir .1988). I ask that if anything is in the wrong format, or cites the wrong federal code, etc, that Your Honor allow me to fix it, instead of dismissing this Adversary Proceeding.

## **COMPLAINT FOR DECLARATORY JUDGMENT**

I, Christopher Lee Shanks, Borrower (collectively, "Plaintiff" and/or "Borrower"), bring this Complaint (hereinafter "Complaint") against the debtors and debtors in possession (collectively, the "Debtors", "They", "Them", "Celsius" and "Defendants") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), and allege and state the following:

## **PRELIMINARY STATEMENT**

1. Prior to the Petition Date, the Debtors offered a series of crypto currency programs, including an "earn" account and a "borrow" account. Each account was governed by certain agreements (collectively, the "**Account Agreements**")[2].

2. With respect to the borrow program, a Celsius customer could become a "borrower" by entering into an agreement with Celsius (a "**Loan Agreement**") pursuant to which she/he would receive either fiat[3] currency or stablecoins in exchange for posting his/her cryptocurrency as collateral with Celsius (the "**Collateral**"). When a loan was issued (the "**Loan**"), Celsius provided the borrower with a Truth in Lending Act Statement ("**TILA Statement**"), which detailed the cost of the loan (principal and interest payments to be made) under the terms of the loan. Once the Loan is repaid, the Debtors were obligated under the Loan Agreement to release the Collateral to the Borrower.

3. Unlike the Earn program, the Loan Agreement did not transfer title of the cryptocurrency to Celsius. This was explained on February 10, 2020 by Aliza Landes, then Vice President of Retail Lending, who described taking a retail loan as "*you're not going into debt, you're borrowing against something that you own.*" Celsius Network AMA – Ask Aliza Anything!, YouTube (February 10, 2020), https://youtu.be/RIfECR1Ghhk?t=2106.

4. Plaintiff seeks a judgment declaring that:
    a. The Collateral is not property of the estate, it should be returned to the Borrower;
    b. The Debtors should be compelled to provide an accounting and turnover the Collateral;
    c. The Loan Agreements are consumer credit transactions under the Truth in Lending Act and are entitled to the protection afforded to such transactions under section 363(o) of title 11.
    d. The Debtors engaged in deceptive business practices;

---

[2] The Loan Agreements are set forth in the Declaration of Alex Mashinsky dated August 10, 2023 (ECF Docket #393) and is incorporated herein by reference.

[3] "Fiat" currency refers to legal tender issued by a government that is not backed by any commodities, such as gold or silver.

    e.    The Debtors committed consumer fraud;

    f.    The Debtors committed **fraud in the inducement** and/or made certain misrepresentations to the Borrower which render the Loans void and unenforceable;

    g.    The Debtors breached the Loan Agreement;

    h.    The Debtors forced default on Plaintiff's loan; and/or

    i.    The Debtors have been unjustly enriched by the Collateral.

## THE PARTIES

5. Plaintiff, Christopher Lee Shanks, the Borrower.

6. The Defendants are the Debtors in the above-captioned Chapter 11 Cases. The Debtors' names and addresses are set forth in each of their respective voluntary petitions for chapter 11 relief. The corporate organization of the Debtors, as well as their jurisdictions of formation, are set forth in **Exhibit A** to the *Declaration of Alex Mashinsky, Chief Executive Officer of Celsius Network LLC, in Support of Chapter 11 Petitions and First Day Motions*, filed on July 14, 2022 (ECF Docket # 23) (the "First Day Declaration").

## JURISDICTION AND VENUE

7. This adversary proceeding arises in and relates to the Chapter 11 Cases pending before the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") under title 11.

8. The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 157 and 1334. The adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (G), (K) and/or (O).

9. Venue is proper pursuant to 28 U.S.C. § 1408 and 1409.

10. The statutory predicates for the relief requested herein are Title 11 §105, 363 and 541 of the and Title 11 § 7001(1) and 7001(9).

## BACKGROUND AND FACTS

11. On or about March 2018, the Debtors launched their "crypto asset-based finance platform" (the "Celsius Platform"). ECF Docket # 1411, p. 7.

12. The Debtors offered a borrow program to their customers which allowed Borrowers to post cryptocurrency assets as security in exchange for a loan in fiat currency or stablecoin.

13. Prior to the Petition Date, Plaintiff entered into a Loan Agreement (#45846) with the Debtors pledging 8.7073065 BTC in total as collateral.

14. On or about October 6th 2021, the Debtors breached contract with Plaintiff by not providing the excess Bitcoin (the "BTC") due to the appreciation of its value when Plaintiff initiated a Reverse Margin Call. **Exhibit B** & **B2**.

15. On or about November 8th 2021, the Debtors still provided no correspondence with Plaintiff's initial Reverse Margin Call and willfully continued to breach contract with Plaintiff when another Reverse Margin Call was initiated. **Exhibit C.**

16. On or about June 12, 2022, the Debtors froze the ability of the Borrowers to withdrawals, transfers, and swaps of any funds from and to their accounts on the Celsius Platform. **https://celsiusnetwork.medium.com/a-memo-to-the-celsius-community-59532a06ecc6**.

17. On June 13th 2022, Celsius initiated a Margin Call on Plaintiff due to the value depreciation of BTC. Plaintiff immediately opened a help desk ticket #1012354 with Celsius attempting to resolve the matter due to Debtors actions on June 12th preventing withdrawals, swaps, and transfers on their platform. **See exhibit D & D2.**

18. On June 15th 2022, Celsius still failed to provide any correspondence to help resolve the matter that was created by their actions and forced Plaintiff under duress of impossibility into default. **See exhibit E.**

19. When Celsius liquidated Plaintiff's BTC:

    a.  -7.01754386 was loan principal liquidation; **See Exhibit F.**

    b.   -0.052386953 BTC was loan interest liquidation; **See Exhibit F.**

    c.   and -0.212097924 was operation cost. **See Exhibit F.**

    d.   This left a BTC balance of 1.433533 allowed to be withdrawn by Plaintiff. **See Exhibit G**

20. Plaintiff attempted numerous times to withdraw his cryptocurrency from the Celsius platform and was continually met with withdrawals, transfers and deposits are frozen from the Celsius platform.

21. On July 11th 2022, Plaintiff initiated an email to request to withdraw his cryptocurrency from the Celsius platform and was denied. **See exhibit H.**

22. On November 19, 2022, the Examiner issued the Interim Report of Shoba Pillay, Examiner (ECF Docket # 1411, the "Interim Examiner Report"). The Plaintiff incorporates by reference all statements contained in the Interim Examiner Report as if fully set forth at length herein.

23. On January 31, 2023, the Examiner issued the Final Report of Shoba Pillay, Examiner (ECF Docket # 1956, the "Final Examiner's Report"). The Plaintiff incorporates by reference all statements contained in the Final Examiner's Report as if fully set forth at length herein.

24. Celsius promoted and advertised its services, using social media. In particular, Mr. Alex Mashinsky would host weekly AMAs (Ask Mashinsky Anything) ("AMAs") on youtube.com[4]. The AMAs were abundant with repeated misrepresentations concerning the financial stability of Celsius, the risks associated with depositing cryptocurrency at Celsius, its regulatory compliance, its transparency and ownership of the cryptocurrency assets, including the ownership of the Collateral on the Celsius Platform.

25. Among other things, the following false representations were made during the AMAs:

    a.   **Representations concerning Celsius' Financial Stability**

* *A run on the bank cannot happen at Celsius because Celsius never lends more than what it has ...we always have enough coins and enough collateral and so*

---

[4] Celsius has hundreds of these marketing videos on its Youtube.com channel. See https://www.youtube.com/@CelsiusNetwork/videos

*on to return all the assets to all of our users*. Celsius, Expansion in Asia with Special Guest Lennis Lai (OkEx) - Celsius AMA, YouTube (April 30, 2021), https://www.youtube.com/live/LaIfR4BuIno?feature=share&t=4048.

b. **Representations concerning Bankruptcy of Celsius**

- On March 25, 2021, Mashinsky, posted on Twitter, in reply to a Twitter user who asked what would happen to their coins in the event of Celsius's bankruptcy, that "*all coins are returned to their owners even in the case of bankruptcy*".



26. In a November 26, 2019 AMA, Mr. Mashinsky stated "[t]hese are your coins, not our coins. Whatever you put in, if you put in one Bitcoin, you will be withdrawing one Bitcoin . . . It's always your Bitcoin. Always your Ether. Always your CEL Token." https://www.youtube.com/live/H1n5g7uJyvQ?feature=share&t=2171.

27. On February 10, 2020, Aliza Landes, the Vice President of Retail Lending, described taking a retail loan as "you're not going into debt, you're just borrowing against something you own." Celsius, Celsius Network AMA – Ask Aliza Anything!, YouTube (February 10, 2020), https://youtu.be/RIfECR1Ghhk?t=2108.

28. On July 24, 2020, Mr. Mashinsky stated: "When you give us Bitcoin it's not like it's ours, right? It's yours legally. It is still your Bitcoin. The only thing we do is when you lend us your Bitcoin, we lend them to people who pay us interest. When they return them, it goes back to the wallet and

it's still yours from that wallet." Celsius Network AMA with Alex Mashinsky and HFN's Roni CohenPavon, YouTube (July 24, 2020), https://www.youtube.com/live/kC-89USzxaM?feature=share&t=4601

29. As detailed at length in the Final Examiner's Report, Celsius knew that the representations identified above were false. See Examiner's Report, Part II, Article VI,G at p. 256-67 entitled "**Celsius did not Correct Its Misleading and Inaccurate Statements**" ("the Examiner found no evidence that anyone at Celsius suggested or executed on a process of correcting or retracting inaccurate and misleading statements that Celsius' employees identified and removed (or attempted to remove) between May 2021 and June 2022.")(emphasis supplied).

30. In reasonable reliance upon the Debtors' misrepresentations, Plaintiff entered into a Loan Agreement (#45846) in exchange for pledging his collateral to Celsius. Approximate BTC collateralized is 8.7073065.

31. The Debtors agreed to return the Collateral to the Borrowers' Deposit Accounts, once the Loans were repaid. See,ECF Docket # 393, at p. 684, 698, 729, 760, 793, 827, 861 and 896 ("Within ten (10) days of your full repayment of the [outstanding Loan Amount or Principal amount and all outstanding Obligations], Celsius shall release all remaining collateral to your Celsius Account.").

## FIRST CLAIM FOR RELIEF

### (Declaratory Judgment Pursuant to Bankruptcy Rule 7001(9) that Collateral is Not Property of the Estate)

32. The Collateral is not property of the Debtors's estates.

33. The Loan Agreement did not transfer title to Celsius. Rather, under the Loan Agreement, the Borrower consented to Celsius's use of the Collateral during the loan period.

34. The Debtors repeatedly represented that the Collateral was the property of the Borrower.

35. For example, during weekly livestream conversations, the Debtors's co-founder and majority owner, Alex Mashinsky, repeatedly represented to each of the Borrowers that the Collateral "are your coins, not our coins." ECF Docket # 1956, p. 10.

36. Based on the foregoing and the facts incorporated herein by reference, the Plaintiff is entitled to a judgment declaring that the Collateral is not property of the Debtors's bankruptcy estates pursuant to section 541(d) of the Bankruptcy Code.

## SECOND CLAIM FOR RELIEF
### (Accounting and Turnover of Collateral)

37. The Loan Terms make clear that the Debtors only hold possession, not ownership, of the Collateral. ECF Docket # 393, p. 736, 768, 801, 835, 869 and 886 (Debtors "shall have actual possession of, and a first priority security interest in the collateral" only).
38. As a "Pledgee" and/or secured lienholder, the Debtors do not own the Collateral.
39. The Plaintiff is entitled to a judgment compelling the Debtors to provide an accounting and turnover of the Collateral.

## THIRD CLAIM FOR RELIEF
### (Declaratory Judgment Pursuant to Bankruptcy Rule 7001(9) that the Loans are Entitled to the Protections under 11 U.S.C § 363(o))

40. The Borrower is a consumer.
41. The Debtors extended the Loans to consumer Borrowers primarily for personal, family or household purposes.
42. In connection with the Loans, the Borrowers were provided with TILA Statements.
43. The Loans constitute consumer credit transactions and are entitled to the protections under Section 363(o) of the Bankruptcy Code.

## FOURTH CLAIM FOR RELIEF
### (Deceptive Trade Practices)

44. Each of the Debtors misrepresented material facts concerning the transfer of the Collateral to the Celsius Platform.

45. The Debtors' co-founder and majority owner, Alex Mashinsky, repeatedly represented to each of the Borrowers that the Collateral "are your coins, not our coins." ECF Docket # 1956, p. 10.

46. The Debtors also represented that they would only possess, not own, the Collateral once such assets were transferred to the Celsius Platform for the loan program. ECF Docket # 393, p. 736, 768, 801, 835, 869 and 886 (Debtors "shall have actual possession of, and a first priority security interest in the Collateral" only); see also ECF Docket # 393, p. 690 705-06, 903 (identifying Debtors' rights as "pledgee").

47. The Debtors further made false and misleading claims as set forth above and detailed in the Final Examiner's Report. Among other things, those false and misleading claims related to:

    a. their financial health;
    b. their compliance with applicable laws and regulations;
    c. their ability to meet obligations;
    d. their ability to safeguard customer assets; and
    e. their revenue sources

48. The Debtors engaged in deceptive trade practices by, among other things: (1) advertising goods or services with intent not to sell them as advertised; and (2) engaging in other conduct which similarly creates a likelihood of confusion or of misunderstanding, including, without limitation, the Debtors' purported rights regarding the Collateral.

49. As a direct and proximate result of these deceptive trade practices, the Borrower incurred losses, suffered harm, including monetary damages, and litigation costs.

## **FIFTH CLAIM FOR RELIEF**

## **(Consumer Fraud)**

50. The Borrower is a consumer.

51. Each of the Debtors misrepresented material facts concerning the "borrow" program and the borrower's rights in the Collateral.

52. For example, during weekly livestream conversations, the Debtors' co-founder and majority owner, Alex Mashinsky, repeatedly represented to each of the Borrowers that the Collateral "*are your coins, not our coins*." ECF Docket # 1956, p. 10.

53. The Debtors also represented that they would only possess, not own, the Collateral once such assets were transferred to the Celsius Platform for the loan program. ECF Docket # 393, p. 736, 768, 801, 835, 869 and 886 (Debtors "shall have actual possession of, and a first priority security interest in the Collateral" only); see also ECF Docket # 393, p. 690, 705-06, 903 (identifying Debtors' rights as "pledgee").

54. The Debtors engaged in unlawful practices (i.e. consumer fraud) by, among other things misrepresenting, deceiving, fraudulently stating, fraudulently promising, unfairly endorsing, suppressing or concealing material facts concerning Celsius and the "borrow" program, including, without limitation, false and misleading claims as detailed in the Examiner's Report concerning, inter alia:

    a. The Debtors' financial health;
    b. The Debtors' compliance with applicable laws and regulations;
    c. The Debtors' ability to meet obligations;
    d. The Debtors' ability to safeguard customer assets; and
    e. The Debtors' revenue sources.

55. The Debtors made these misrepresentations of material facts and/or actively concealed these material facts in connection with inducing consumers to open or maintain accounts on the Celsius Platform.

56. The Debtors made these misrepresentations with the intent of inducing reasonable consumers, such as the Borrowers, to rely on such misrepresentations

57. The Borrowers reasonably relied upon the Debtors' misrepresentations, to their detriment.

58. As a direct and proximate result of these unlawful practices, the Borrower incurred losses, suffered harm, including monetary damages, and costs of litigation.

## SIXTH CLAIM FOR RELIEF

### (Fraudulent Misrepresentations)

59. The Debtors had a duty to communicate information to the Borrowers in an accurate and truthful manner.

60. As detailed in the Final Examiner's Report, the Debtors made factual representations to the Borrowers regarding the Celsius Platform and their respective accounts thereon, including, without limitation, false and misleading claims about, inter alia:

    a. The Debtors' financial health;

    b. The Debtors' compliance with applicable laws and regulations;

    c. The Debtors' ability to meet obligations;

    d. The Debtors' ability to safeguard customer assets;

    e. The Debtors' revenue sources.

61. Each of these representations were material to the Borrowers' decision to transfer the Collateral to the Celsius Platform

62. Each of the Debtors' representations of material facts were false, as the Debtors intentionally and knowingly mischaracterized how the Collateral would be handled on the Celsius Platform, among other things.

63. The Debtors:

    a. knew that their representations of material fact were false and misleading at the time that they represented the information to the Borrowers

    b. misrepresented the material facts with reckless indifference to their truth; and/or

    c.   should have known and/or had knowledge that their representations of material facts were false and misleading at the time that they represented the information to the Borrowers.

64. The Debtors intentionally communicated the inaccurate information to the Borrowers for the purpose of inducing the Borrowers to rely on those misrepresentations.

65. The Borrower justifiably relied upon the Debtors' misrepresentations of material facts to their detriment.

66. The Borrowers' reliance on the Debtors' misrepresentations of material facts were reasonable.

67. But for the Debtors' fraudulent representations, the Borrower would not have entered the Loan Agreement.

68. As a direct and proximate result of these unlawful practices, the Borrower incurred losses, suffered harm, including monetary damages, and costs of litigation.

## EIGHTH CLAIM FOR RELIEF
### (Declaratory Judgment Pursuant to Bankruptcy Rule 7001(9) that the Loan Agreements are not Enforceable)

69. The Borrower is an individual consumer.

70. The Borrower's Loan is a consumer loan.

71. The Debtors breached the Loan Agreement by, among other things, engaging in the fraudulent conduct described above and as detailed in the Final Examiner's Report, put Plaintiff under duress of impossibility forcing loan default, did not provide excess BTC when plaintiff initiated Reverse Margin Calls, and did not allow Plaintiff to withdraw his crypto from the platform after liquidation.

72. The Debtors repeatedly misrepresented information to the Borrowers, including, without limitation, how Celsius would treat the Collateral on its platform.

73. The Debtors knowingly misrepresented facts to the Borrowers to induce the borrowers to enter the Loan Agreements.

74. But for the Debtors' conduct, **the Borrower would not** have entered into the Loan Agreements.

75. As a result of the Debtors' conduct and in accordance with various consumer protection statutes, the Borrowers' Loans are void and unenforceable.

## NINTH CLAIM FOR RELIEF

**(Declaratory Judgment that the Loans are Void and Unenforceable Due to Fraudulent Inducement)**

76. As set forth in the Final Examiner's Report, the Debtors made numerous representations concerning:
    a. the Debtors' financial health;
    b. the Debtors' compliance with applicable laws and regulations;
    c. the Debtors' ability to meet obligations;
    d. the Debtors' ability to safeguard customer assets; and/or
    e. Debtors' revenue sources

77. Those representations were false.

78. As detailed in the Final Examiner's Report, the Debtors were aware of the falsity of these statements.

79. The Borrower reasonably relied upon the Debtors' fraudulent misrepresentations when entering into the Loan Agreement.

80. The Borrower has been harmed by the Debtors' unlawful, unfair, fraudulent and unconscionable behavior.

81. As a result, the Borrower is entitled to have the Loan Agreement rescinded.

## TENTH CLAIM FOR RELIEF
**(Breach of Contract)**

82. To the extent that the Loan Agreement constitutes binding contracts, the Debtors were obligated to fulfill both the express and implied terms thereof.

83. The Debtors materially breached the express and implied terms of the Loan Agreement by, among other things, misrepresenting how the Collateral would be treated by the Debtors on the Celsius Platform.

84. The Debtors breached the terms of agreement when Plaintiff initiated a Reverse Margin call and the Debtors failed to perform.

85. Additionally, since at least June 12, 2022, the Debtors have prevented the Borrower from recovering their Collateral, even though the Loan Terms provide, "[b]oth you and/or Celsius may, for any or no reason, terminate the Loan within thirty (30) days prior notice in writing to the other party.". ECF Docket # 323, p. 895.

86. Due to the foregoing freeze actions of the Debtors, Plaintiff was put under duress of impossibility forcing Plaintiff into default. Plaintiff incurred a loss by the actions of the Debtors.

87. When Celsius liquidated Plaintiff's Bitcoin:
    a. -7.01754386 was loan principal liquidation;
    b. -0.052386953 BTC was loan interest liquidation;
    c. and -0.212097924 was operation cost.
    d. This left a Bitcoin balance of 1.433533 and was immediately deposited into an earned account instead of a custody account. **See Exhibit H.**

88. Had the Debtors permitted the Borrowers to repay or refinance their Loans, then the Borrower would have been entitled to the release of their Collateral. ECF Docket # 323, p. 896.

89. As a result of the Debtors' material breaches of the Loan Agreement, the Borrower incurred loss, suffered significant harms, including, but not limited to, monetary damages, and litigation costs.

## ELEVENTH CLAIM FOR RELIEF
### (Unjust Enrichment)

90. To the extent that the Collateral is property of the Debtors' bankruptcy estates, the Debtors' bankruptcy estates have been unjustly enriched.

91. The Debtors repeatedly represented that the Collateral was the property of the Borrowers.

92. In reliance on the Debtors' representations, the Borrower transferred the Collateral onto the Celsius Platform.

93. Due to the foregoing freeze actions of the Debtors, Plaintiff was put under duress of impossibility forcing Plaintiff into default. Plaintiff incurred a loss by the actions of the Debtors unjustly enriching the Debtors estate.

94. Plaintiff was not given the ability to withdraw his excess Bitcoin after being forced into default unjustly enriching Debtor's estate.

95. To the extent the Collateral is determined to be property of the Debtors' bankruptcy estates, the transfers of the Collateral to the Debtors enriched the Debtors' bankruptcy estates by the value of the Collateral.

96. To the extent the Borrowers cannot withdraw the Collateral from Celsius, the transfers of the Collateral impoverished the Borrower by the value of the Collateral.

97. It is inequitable and unjust to permit the Debtors' bankruptcy estates to continue to retain the Collateral.

## **CONCLUSION**

WHEREFORE, the Plaintiff respectfully requests that this Court enter a judgment and award damages against the Debtors, plus pre-judgment interest, post-judgment interest, Plaintiff's time, costs of this litigation, and any additional relief or sanctions this Court deems necessary.

/s/ Christopher Lee Shanks
Christopher Lee Shanks

Date Electronically signed: 20th day of February 2023