Hearing Date: May 17, 2023, at 10:00 a.m. (prevailing Eastern Time)

| | |
|---|---|
| Joshua A. Sussberg, P.C. | Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*) |
| **KIRKLAND & ELLIS LLP** | Ross M. Kwasteniet, P.C. (admitted *pro hac vice*) |
| **KIRKLAND & ELLIS INTERNATIONAL LLP** | Christopher S. Koenig |
| 601 Lexington Avenue | Dan Latona (admitted *pro hac vice*) |
| New York, New York 10022 | **KIRKLAND & ELLIS LLP** |
| Telephone:      (212) 446-4800 | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Facsimile:      (212) 446-4900 | 300 North LaSalle Street |
| | Chicago, Illinois 60654 |
| | Telephone:      (312) 862-2000 |
| | Facsimile:      (312) 862-2200 |

*Counsel to the Debtors and Debtors in Possession*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |
| CHRISTOPHER LEE SHANKS, | |
| Plaintiff, | Adversary Proceeding No. 23-01010 (MG) |
| v. | |
| CELSIUS NETWORK LLC, *et al.*; | |
| Defendants. | |

## NOTICE OF HEARING ON DEBTORS' MOTION TO DISMISS
## THE AMENDED COMPLAINT

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

**PLEASE TAKE NOTICE** that a hearing on the *Debtors' Motion to Dismiss the Amended Complaint and Incorporated Memorandum of Law* (the "Motion") will be held on **May 17, 2023, at 10:00 a.m., prevailing Eastern Time** (the "Hearing") before the Honorable Martin Glenn, Chief United States Bankruptcy Judge.  In accordance with General Order M-543 dated March 20, 2020, the Hearing will be conducted remoted using Zoom for Government.  Parties wishing to appear at the Hearing, whether making a "live" or "listen only" appearance before the Court, need to make an electronic appearance (an "eCourtAppearance") through the Court's website at https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl.  Electronic appearances (eCourtAppearances) need to be made by 4:00 p.m., prevailing Eastern Time, the business day before the hearing (*i.e.*, on **May 16**).

**PLEASE TAKE FURTHER NOTICE** that due to the large number of expected participants in the Hearing and the Court's security requirements for participating in a Zoom for Government audio and video hearing, all persons seeking to attend the Hearing at 10:00 a.m., prevailing Eastern Time on May 17, 2023, must connect to the Hearing beginning at 9:00 a.m., prevailing Eastern Time on May 17, 2023.  When parties sign in to Zoom for Government and add their names, they must type in the first and last name that will be used to identify them at the Hearing.  Parties that type in only their first name, a nickname, or initials will not be admitted into the Hearing.  When seeking to connect for either audio or video participation in a Zoom for Government Hearing, you will first enter a "Waiting Room" in the order in which you seek to connect.  Court personnel will admit each person to the Hearing from the Waiting Room after confirming the person's name (and telephone number, if a telephone is used to connect) with their eCourtAppearance.  Because of the large number of expected participants, you may experience a delay in the Waiting Room before you are admitted to the Hearing.

**PLEASE TAKE FURTHER NOTICE** that any responses to the relief requested in the Motion shall: (a) be in writing; (b) conform to the Federal Rules of Bankruptcy Procedure, the Federal Rules of Civil Procedure, the Local Bankruptcy Rules for the Southern District of New York, and all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York; and (c) be filed electronically with the Court on the docket of *Shanks v. Celsius Network LLC, et al.*, No. 23-01010 (MG) by registered users of the Court's electronic filing system and in accordance with all General Orders applicable to chapter 11 cases in the United States Bankruptcy court for the Southern District of New York (which are available on the Court's website at http://www.nysb.uscourts.gov/).

**PLEASE TAKE FURTHER NOTICE** that pursuant to the *Amended Final Order (I) Establishing Certain Notice, Case Management, and Administrative Procedures and (II) Granting Related Relief* [Docket No. 1181] (the "Case Management Order"), unless otherwise ordered by the Court, the deadline to file objections or responses to the Motion is **May 10, 2023 at 4:00 p.m. (prevailing Eastern Time)**.

**PLEASE TAKE FURTHER NOTICE** that only those responses that are timely filed, served, and received will be considered at the Hearing.  Failure to file a timely response may result in entry of a final order granting the Motion as requested by the Debtors.

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion and other pleadings filed in these chapter 11 cases may be obtained free of charge by visiting the website of Stretto at https://cases.stretto.com/celsius.  You may also obtain copies of the Motion and other pleadings filed in these chapter 11 cases by visiting the Court's website at http://www.nysb.uscourts.gov/ in accordance with the procedures and fees set forth therein.

Washington, D.C.
Dated: April 12, 2023

/s/ T.J. McCarrick

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Judson Brown, P.C. (admitted *pro hac vice*)
T.J. McCarrick (admitted *pro hac vice*)
Leah Hamlin (admitted *pro hac vice*)
1301 Pennsylvania Avenue NW
Washington, D.C. 20004
Telephone:    (202) 389-5000
Facsimile:    (202) 389-5200
Email:        judson.brown@kirkland.com
              tj.mccarrick@kirkland.com
              leah.hamlin@kirkland.com

- and -

Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:        joshua.sussberg@kirkland.com

- and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:        patrick.nash@kirkland.com
              ross.kwasteniet@kirkland.com
              chris.koenig@kirkland.com
              dan.latona@kirkland.com

*Counsel to the Debtors and Debtors in Possession*

**Hearing Date: May 17, 2023, at 10:00 a.m. (prevailing Eastern Time)**

Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |
| CHRISTOPHER LEE SHANKS, | |
| Plaintiff, | Adversary Proceeding No. 23-01010 (MG) |
| v. | |
| CELSIUS NETWORK LLC, *et al.*; | |
| Defendants. | |

## DEBTORS' MOTION TO DISMISS THE AMENDED
## COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................... 1

STATEMENT OF CONSENT ........................................................................................... 2

FACTUAL BACKGROUND .............................................................................................. 2

I.      Celsius Operations Prior to Bankruptcy ................................................................. 2

II.     The Ownership of Earn Assets and Sale of Stablecoin Motion and Order ......................... 3

III.    Plaintiff's Adversary Proceeding ......................................................................... 6

LEGAL STANDARD .......................................................................................................... 8

ARGUMENT .................................................................................................................... 11

I.      The Earn Order Requires Plaintiff To Bring His Damages Claims Through the
        Claims Allowance Process ................................................................................. 11

II.     Even if Plaintiff's Damages Claims Are Not Barred, He Has Failed to State a
        Claim Upon Which Relief May Be Granted .......................................................... 15

        A.     Celsius Did Not Breach Its Loan Agreement with Plaintiff ................................. 15

        B.     Plaintiff Does Not Have Any Viable Fraud Claims ............................................. 18

        C.     Plaintiff Has Failed to State a Claim for Unjust Enrichment .............................. 28

III.    Plaintiff Is Not Entitled to Any Declaratory Relief .......................................... 28

        A.     Plaintiff's Unliquidated Collateral in His Earn Account is Property of the
            Estate .................................................................................................... 29

        B.     Plaintiff's Loan Is Not Entitled to Section 363(o) Protection ............................. 29

        C.     Plaintiff's Loan Agreement Is Valid and Enforceable ........................................ 31

IV.    Plaintiff Is Not Entitled to an Accounting or Turnover of Collateral .............................. 33

CONCLUSION ................................................................................................................. 34

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re 477 W. 142nd St. Hous., Dev. Fund Corp.*,
  No. 15-12178, 2020 WL 3067733 (Bankr. S.D.N.Y. June 8, 2020) .................................10, 13

*Am. Fin. Int'l Grp.-Asia, LLC v. Bennett*,
  No. 05-cv-8988, 2007 WL 1732427 (S.D.N.Y. June 14, 2007) .............................................24

*Am. Med. Ass'n v. United Healthcare Corp.*,
  No. 00 Civ. 2800, 2007 WL 683974 (S.D.N.Y. Mar. 5, 2007) .............................................28

*Am. Tissue, Inc. v. Donaldson, Lufkin & Jenrette Secs. Corp.*,
  351 F. Supp. 2d 79 (S.D.N.Y. 2004) . Bankruptcy ...................................................................9

*In re AMR Corp.*,
  567 B.R. 247 (Bankr. S.D.N.Y. 2017) ...............................................................................10, 12

*Aramony v. United Way of Am.*,
  254 F.3d 403 (2d Cir. 2001).............................................................................................12, 14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).................................................................................................................9

*Asimov v. Trident Media Grp., LLC*,
  No. 654129/2013, 2014 WL 4109705 (N.Y. Sup. Ct. Aug. 15, 2014)...................................21

*ATSI Commc'ns Inc. v. Shaar Fund, Ltd.*,
  493 F.3d 87 (2d Cir. 2007).....................................................................................................10

*Axginc Corp. v. Plaza Automall, Ltd.*,
  759 F. App'x 26 (2d Cir. 2018) .............................................................................................32

*B&M Linen, Corp. v. Kannegiesser, USA, Corp.*,
  679 F. Supp. 2d 474 (S.D.N.Y. 2010)....................................................................................23

*Bailey v. N.Y. Law Sch.*,
  No. 16-cv-4283, 2017 WL 6611582 (S.D.N.Y. Dec. 27, 2017)............................................24

*Barnes v. State Farm Mutual Auto. Ins. Co.*,
  497 P.3d 5 (Colo. App. 2021).................................................................................................23

*Baron v. Pfizer, Inc.*,
  42 A.D.3d 627 (N.Y. App. Div. 2007) ..............................................................................20, 22

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)..................................................................................................9

*Bernardi v. Spyratos,*
    79 A.D.3d 684 (N.Y. App. Div. 2010) ...................................................................23

*BNP Paribas Mortg. Corp. v. Bank of Am., N.A.,*
    949 F. Supp. 2d 486 (S.D.N.Y. 2013).....................................................................28

*C=Holdings B.V. v. Asiarim Corp.,*
    992 F. Supp. 2d 223 (S.D.N.Y. 2013)......................................................................19

*Caputo v. Pfizer, Inc.,*
    267 F.3d 181 (2d Cir. 2001)..............................................................................24, 27

*Chen v. Dunkin' Brands, Inc.,*
    954 F.3d 492 (2d Cir. 2020)....................................................................................20

*Chiste v. Hotels.com L.P.,*
    756 F. Supp. 2d 382 (S.D.N.Y. 2010).....................................................................20

*Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.,*
    70 N.Y.2d 382 (1987) .............................................................................................28

*CLP Toxicology, Inc. v. Casla Bio Holdings LLC,*
    Nos. 2018-0783-PRW & 2019-0401-PRW, 2021 WL 2588905 (Del. Ch. June
    14, 2021) .................................................................................................................17

*Cohen v. Koenig,*
    25 F.3d 1168 (2d Cir. 1994).....................................................................................24

*Credit Agricole Indosuez v. Rossiyskiy Kredit Bank,*
    94 N.Y.2d 541 (2000) .............................................................................................33

*Crigger v. Fahnestock & Co.,*
    443 F.3d 230 (2d Cir. 2006).....................................................................................25

*Cyganowski v. Beechwood Re Ltd.,*
    427 F. Supp. 3d 395 (S.D.N.Y. 2019).....................................................................11

*D&W Diesel v. McIntosh,*
    307 A.D.2d 750 (N.Y. App. Div. 2003) ..................................................................34

*Daniel v. Mondelez Int'l, Inc.,*
    287 F. Supp. 3d 177 (E.D.N.Y. 2018) ...............................................................25, 27

*DeLuca v. AccessIT Grp., Inc.,*
    695 F. Supp. 2d 54 (S.D.N.Y. 2010)........................................................................9

iv

*Destiny USA Holdings, LLC v. Citigroup Glob. Mkts. Realty Corp.*,
  69 A.D.3d 212 (N.Y. App. Div. 2009) ...................................................................33

*DiMuro v. Clinique Laboratories, LLC*,
  572 Fed. App'x 27 (2d Cir. 2014).........................................................................10

*Estate of Portnick v. Countrywide Home Loans, Inc.*, ,
  282 F.R.D. 81 (D. Del. 2012) .........................................................................25, 28

*Fenton v. Criterion Worldwide*,
  No. 18 Civ. 10224, 2020 WL 1489795 (S.D.N.Y. Mar. 27, 2020) ..................25, 28

*In re Fyre Festival Litig.*,
  399 F. Supp. 3d 203 (S.D.N.Y. 2019)...............................................................24, 27

*Fuller Landau Advisory Servs. Inc. v. Gerber Fin. Inc.*,
  333 F. Supp. 3d 307 (S.D.N.Y. 2018)...................................................................33

*Geldzahler v. N.Y. Med. Coll.*,
  663 F. Supp. 2d 379 (S.D.N.Y. 2009).....................................................................9

*Gennari v. Weichert Co. Realtors*,
  148 N.J. 582 (1997) ............................................................................................23

*Georgetown Crossing LLC v. Ruhl*,
  No. 589-S, 2006 WL 3720134 (Del. Ch. Dec. 5, 2006) .........................................15

*Glob. Network Commc'ns, Inc. v. City of New York*,
  458 F.3d 150 (2d Cir. 2006)..................................................................................10

*Goel v. Bunge, Ltd.*,
  820 F.3d 554 (2d Cir. 2016)................................................................................9, 10

*Greenspan v. Allstate Ins. Co.*,
  937 F. Supp. 288 (S.D.N.Y. 1996) ........................................................................33

*Hudson Neurosurgery, PLLC v. UMR, Inc.*,
  No. 20-CV-9642, 2022 WL 902107 (S.D.N.Y. Mar. 28, 2022)...............................16

*Indep. Ord. of Foresters v. Donald, Lufkin & Jenrette, Inc.*,
  157 F.3d 933 (2d Cir. 1998)..................................................................................23

*Joyner v. Greiner*,
  195 F. Supp. 2d 500 (S.D.N.Y. 2002)......................................................................9

*In re Keenan*,
  195 B.R. 236 (Bankr. W.D.N.Y. 1996) ..................................................................33

*Koch v. Rodenstock*,
  No. 06 Civ. 6586, 2012 WL 5844187, (S.D.N.Y. May 9, 2012), *report and
  recommendation adopted*, 2012 WL 5845455 (S.D.N.Y. Nov. 19, 2012) .............................31

*Kommer v. Ford Motor Co.*,
  No. 1:17-CV-296, 2017 WL 3251598 (N.D.N.Y. July 28, 2017) ..........................................21

*Lerner v. Fleet Bank, N.A.*,
  459 F.3d 273 (2d Cir. 2006)........................................................................................11, 26

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
  672 F.3d 155 (2d Cir. 2012)...............................................................................................23

*Long v. De Feis O'Connell & Rose, P.C.*,
  No. 20 Civ. 2530, 2021 WL 257135 (S.D.N.Y. Jan. 26, 2021), *appeal
  dismissed* (May 27, 2021) ..................................................................................................32

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
  797 F.3d 160 (2d Cir. 2015)...............................................................................................11

*Meadows v. United Servs., Inc.*,
  963 F.3d 240 (2d Cir. 2020) (per curiam).............................................................................9

*Meso Scale Diagnostics, LLC v. Roche Diagnostics GmbH*,
  62 A.3d 62 (Del. Ch. 2013).................................................................................................15

*In re Methyl Tertiary Butyl Ehter*,
  457 F. Supp. 2d 455 (S.D.N.Y. 2006)..................................................................................31

*Millennium Health, LLC v. EmblemHealth, Inc.*,
  240 F. Supp. 3d 276 (S.D.N.Y. 2017)..................................................................................20

*Mills v. Polar Molecular Corp.*,
  12 F.3d 1170 (2d Cir. 1993)........................................................................................10, 26

*Mohegan Lake Motors, Inc. v. Maoli*,
  559 F. Supp. 3d 323 (S.D.N.Y. 2021)............................................................................24, 26

*In re Motors Liquidation Co.*,
  585 B.R. 708 (Bankr. S.D.N.Y. 2018) (Glenn, J.)..................................................................12

*Nat'l Enters. Inc. v. New Eng. Dev. II, Inc.*,
  198 F.3d 234 (2d Cir. 1999)...............................................................................................32

*Negrete v. Citibank, N.A.*,
  187 F. Supp. 3d 454 (S.D.N.Y. 2016)..................................................................................16

*Optanix, Inc. v. Alorica Inc.*,
  1:20-cv-09660, 2021 WL 2810060 (S.D.N.Y. July 6, 2021)....................................29

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
  85 N.Y.2d 20 (1995) ...............................................................................................19

*In re PCH Assocs.*,
  949 F.2d 585 (2d Cir. 1991)....................................................................................12

*Pescatore v. Pan Am. World Airways, Inc.*,
  97 F.3d 1 (2d Cir. 1996).........................................................................................12

*Phillips v. Reed Grp., Ltd.*,
  955 F. Supp. 2d 201 (S.D.N.Y. 2013).....................................................................11

*Preira v. Bancorp Bank*,
  885 F. Supp. 2d 672 (S.D.N.Y. 2012)................................................................20, 22

*Ramiro Aviles v. S&P Glob., Inc.*,
  380 F. Supp. 3d 221 (S.D.N.Y. 2019)...............................................................24, 27

*Rand v. Travelers Indemnity Co.*,
  No. 21 CV 10744, 2022 WL 15523722 (S.D.N.Y. Oct. 27, 2022)........................19

*Related Westpac LLC v. JER Snowmass LLC*,
  No. 5001–VCS, 2010 WL 2929708 (Del. Ch. July 23, 2010)...............................17

*Riker, Danzig, Scherer, Hyland & Perretti, LLP v. Premier Cap., LLC*,
  No. 15-CV-8293, 2016 WL 5334980 (S.D.N.Y. Sept. 22, 2016)..........................23

*SKR Res. Inc. v. Players Sports, Inc.*,
  938 F. Supp. 235 (S.D.N.Y. 1996) .........................................................................25

*Small v. Lorillard Tobacco Co.*,
  94 N.Y.d2 43 (1999) ...............................................................................................20

*Soroof Trading Dev. Co. v. GE Fuel Cell Sys. LLC*,
  842 F. Supp. 2d 502 (S.D.N.Y. 2012).....................................................................16

*Spinelli v. Nat'l Football League*,
  96 F. Supp. 3d 81 (S.D.N.Y. 2015) ........................................................................16

*Tardibuono-Quigley v. HSBC Mortg. Corp.*,
  No. 15-CV-6940, 2017 WL 1216925 (S.D.N.Y. Mar. 30, 2017).......................20, 22

*Tolin v. Standard & Poor's Fin. Servs., LLC*,
  950 F. Supp. 2d 714 (S.D.N.Y. 2013)...............................................................24, 27

*Transnational Mgmt. Sys. II, LLC v. Carcione*,
   No. 14-cv-2151, 2016 WL 7077040 (S.D.N.Y. Dec. 5, 2016) ...............................................25

*Twohig v. Shop-Rite Supermarkets, Inc.*,
   519 F. Supp. 3d 154 (S.D.N.Y. 2021)..........................................................................................22

*United States v. Carr*,
   557 F.3d 93 (2d Cir. 2009)....................................................................................................12, 14

*In re USAA Data Sec. Litig.*,
   No. 21 CV 5813, 2022 WL 3348527 (S.D.N.Y. Aug. 12, 2022) ....................................19, 22

*Watts v. Jackson Hewitt Tax Serv. Inc.*,
   579 F. Supp. 2d 334 (E.D.N.Y. 2008) ........................................................................................20

*Westbrooke v. Bellevue Hosp. Ctr.*,
   No. 16-CV-9845, 2019 WL 233611 (S.D.N.Y. Jan. 16, 2019) ...............................................32

*Wiatt v. Winston & Strawn LLP*,
   838 F. Supp. 2d 296 (D.N.J. 2012) .............................................................................................23

*Zappin v. Comfort*,
   No. 18-cv-01693, 2022 WL 6241248 (S.D.N.Y. Aug. 29, 2022)...........................................24

**Statutes**

11 U.S. Code § 1107(a)................................................................................................................3

11 U.S. Code § 1108 ....................................................................................................................3

11 U.S. Code § 363 ....................................................................................................................30

11 U.S. Code § 542 ....................................................................................................................33

New York General Business Law § 349............................................................................ *passim*

**Rules**

Fed. R. Civ. P. 8(a) ....................................................................................................................27

Fed. R. Civ. P. 9(b) ............................................................................................................ *passim*

Fed. R. Civ. P. 12(b)(6)...................................................................................................... *passim*

Fed. R. Bankr. P. 7009 ...............................................................................................................10

Fed. R. Bankr. P. 7012 .............................................................................................................1, 8

Pursuant to Federal Rule of Civil Procedure 12(b)(6), made applicable to this Adversary Proceeding through Federal Rule of Bankruptcy Procedure 7012, Debtor Celsius Network LLC and its debtor affiliates (together, the "Debtors," "Celsius," the "Company," or "Defendants"), as debtors and debtors in possession in the above-captioned chapter 11 cases, respectfully submit this Motion to Dismiss Plaintiff's Amended Complaint (the "Motion") and seek entry of an order (the "Proposed Order"), substantially in the form attached hereto as **Exhibit A**. In support of the Motion, the Debtors state as follows:

## INTRODUCTION

1.      Nearly nine months after filing for bankruptcy, the Debtors have made substantial progress in these cases, highlighted by the Debtors' Plan,[1] which was filed earlier this month. That Plan is the result of tireless work by the Debtors, the Unsecured Creditors Committee, NovaWulf, various other stakeholders, and this Court to find a value-maximizing resolution to these chapter 11 cases that maximizes recovery for all creditors. The end is now in sight.

2.      Plaintiff's adversary case, rooted in his desire to maximize his individual recovery over other similarly situated creditors, undermines these efforts. This Court already held in its Order establishing the Debtors' ownership over Earn Account assets that damages claims, like Plaintiff's here, are explicitly reserved for the claims resolution process. That decision was rooted in the fact that there simply is not enough cryptocurrency to pay all creditors in full, and that some individuals should not be rewarded merely for racing to the courthouse first. The Court should apply the Earn Order here to dismiss Plaintiff's complaint in full, as it has already done on several occasions.

---

[1]     *Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and its Debtor Affiliates* [Case No. 22-10964, Docket No. 2358].

3.     In addition to being procedurally improper, Plaintiff's complaint fails to plead facts sufficient to support his various claims for relief, including breach of contract, fraudulent misrepresentation, deceptive trade practices, unjust enrichment, and declaratory judgment.  Thus, any claims that are not explicitly barred by the Earn Order still must be dismissed for failure to state any claim upon which relief can be granted.

## STATEMENT OF CONSENT

4.     The Debtors confirm their consent to the Court entering final orders or judgments in connection with this adversary proceeding.

## FACTUAL BACKGROUND

### I.     Celsius Operations Prior to Bankruptcy

5.     Celsius is a crypto-based financial platform that provides financial services to institutional, corporate, and retail customers across more than 100 countries.  Celsius was created in 2017 and was one of the first cryptocurrency platforms that allowed customers to transfer their cryptocurrency assets and (a) earn rewards on those assets through an "Earn Account" and/or (b) take out loans using those assets as collateral through a "Borrow Account."[2]

6.     On June 12, 2022, in an effort to stabilize its business and protect its users, Celsius decided to pause all withdrawals, swaps, and transfers on its platform (the "Pause").  Because of the Pause, customers were, among other things, prevented from withdrawing assets from their Celsius accounts or swapping coins on the platform.

7.     On July 13, 2022, (the "Petition Date"), each Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  The Debtors are operating their business and

---

[2]     A full description of Celsius' business operations and the facts and circumstances leading to these chapter 11 cases is set forth in the *Declaration of Alex Mashinsky, Chief Executive Officer of Celsius Network LLC, in Support of Chapter 11 Petitions and First Day Motions* [Case No. 22-10964, Docket No. 23] (the "Mashinsky First Day Declaration").

managing their properties as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code. On July 19, 2022, the Court authorized the joint administration and procedural consolidation of the Chapter 11 cases. *See Order Directing (I) Joint Administration of the Chapter 11 Cases and (II) Granting Related Relief* [Case No. 22-10964, Docket No. 53].

## II.  The Ownership of Earn Assets and Sale of Stablecoin Motion and Order

8.    As recognized by the Debtors and the Court from the earliest days of these chapter 11 cases, a critical threshold issue to resolve was the ownership of the assets transferred by customers into the Debtors' Earn Accounts.

9.    In a series of motions, the Debtors teed up that precise issue. *See Debtors' Motion Seeking Entry of an Order (I) Permitting the Sale of Stablecoin in the Ordinary Course and (II) Granting Related Relief* [Case No. 22-10964, Docket No. 832]; *Debtors' Amended Motion for Entry of an Order (I) Establishing Ownership of Assets in the Debtors' Earn Program, (II) Permitting the Sale of Stablecoin in the Ordinary Course and (III) Granting Related Relief* [Case No. 22-10964, Docket No. 1325] (the "Earn Motion"). Specifically, the Earn Motion requested that the Court to answer "the largest question relating to property of the estate: who holds title to the assets transferred into the Debtors' earn program and any proceeds thereof." Earn Motion, ¶ 1. The Earn Motion "d[id] not seek findings with respect to (x) the ownership of assets in the Debtors' Custody Program, Withhold Accounts, or Borrow Program or (y) whether any Account Holder has valid defenses to the purported contract between Account Holders and the Debtors under the Terms of Use, and all parties' rights [were] reserved with respect to each of the foregoing." *Id.* at ¶ 16.

10.    On December 5, 2022, following extensive briefing, the Court held an evidentiary hearing on the Earn Motion wherein the Debtors' counsel, counsel to the UCC, the United States

Trustee, state regulators, and numerous represented and *pro se* creditors had an opportunity to present evidence and argument.

11.    On January 4, 2023, the Court issued its *Memorandum Opinion and Order Regarding Ownership of Earn Account Assets* [Docket No. 1822] (the "Earn Order"), which concluded, "based on Celsius's unambiguous Terms of Use, and subject to any reserved defenses, that when the cryptocurrency assets … were deposited in Earn Accounts, the cryptocurrency assets became Celsius's property; and the cryptocurrency assets remaining in the Earn Accounts on the Petition Date became property of the Debtors' bankruptcy estates." Earn Order at 4.

12.    In so holding, the Court also emphasized: "A fundamental principle of the Bankruptcy Code is equality of distribution.  There simply will not be enough value available to repay all Account Holders in full.  If only some Account Holders prevail with their arguments that they own the cryptocurrency assets in their accounts, they hope to recover 100% of their claims, while most of the Account Holders are left as unsecured creditors and may recover only a small percentage of their claims." *Id.* at 6.

13.    At multiple points in the Earn Order, the Court explicitly noted that its findings "d[id] not mean holders of Earn Assets will get nothing from the Debtors." *Id.* at 30.  Rather, "[t]he amount of allowed unsecured claims is subject to later determination in this case (through the claims allowance process) and may potentially include damages asserted by Account Holders, *including breach of contract, fraud or other theories of liability*." *Id.* (emphasis added); *see also id.* at 45 ("[C]reditor's rights with respect to various defense to and breach of contract claims are reserved.  Creditors will have every opportunity to have a full hearing on the merits of these arguments *during the claims resolution process*." (emphasis added)).  The Court reiterated that it "t[ook] seriously potential violations of state law and non-bankruptcy federal law, as well as the

litany of allegations including, but not limited to, fraudulent inducement into the contract, fraudulent conveyance, breach of contract, and that the contract was unconscionable," and emphasized that those claims were "explicitly reserved for the claims resolution process." *Id.* at 43.

14.     This Court has already denied three *pro se* motions pursuant to the Earn Order.  On January 6, 2023, the Court denied Kwok Mei Po's motion seeking a ruling that she held full title and ownership to funds in her Earn Accounts.  *See Order Denying Kwok Mei Po's Motion Seeking a Ruling of Full Ownership of Funds* [Case No. 22-10964, Docket No. 1833] (the "Po Denial"). The Court held that Po's "colorable claim[s]" to breach of contract "would not affect the ownership of cryptocurrency deposited in Po's Earn Accounts," and that Po should "assert [her breach-of-contract] claims in the claims-allowance process." *Id.* at 3–4.

15.     On January 25, 2023, this Court once again invoked the Earn Order to deny Kulpreet Khanuja's motion for a ruling that his Earn assets are not part of the Debtors' bankruptcy estates.  *See Order Denying Kulpreet Khanuja's Motion Seeking a Ruling that Personal Earn Assets Are Not Property of the Debtors' Estates* [Case No. 22-10964, Docket No. 1934] (the "Khanuja Denial").  Similar to the Kwok Denial, the Court ruled that "any claim that Celsius breached its contract with Khanuja would not affect the ownership of cryptocurrency deposited in Khanuja's account," and further held that with respect to any potential breach-of-contract claim, Khanuja could "file a proof of claim and assert such claims in the claims-allowance process." *Id.* at 4.

16.     Also on January 25, 2023, the Court denied Rebecca Gallagher's motion for a ruling that her Earn assets are not part of the Debtors' estates on similar grounds.  *See Order Denying Rebecca Gallagher's Motion Seeking a Ruling that All the Coins Deposited in Celsius Earn Are*

*Her Property* [Case No. 10964, Docket No. 1933] (the "Gallagher Denial").  In that ruling, the Court again noted that pursuant to the Earn Order, any contract defenses or breach-of-contract claims "are reserved for the claims resolution process." *Id.* at 2.

### III.    Plaintiff's Adversary Proceeding

17.    On February 10, 2023, Plaintiff Christopher Lee Shanks ("Mr. Shanks" or "Plaintiff") filed his *Complaint against Celsius Network LLC, et al.* [Adv. Pro. No. 23-01010, Docket No. 1] (the "Original Complaint").  On February 21, 2023, Plaintiff filed his *Amended Complaint Against All Defendants* [Adv. Pro. No. 23-01010, Docket No. 4] (the "Amended Complaint").

18.    According to the Amended Complaint, Plaintiff is a customer of Celsius who originated a $142,000 loan through Celsius's Borrow program on May 25, 2021 (the "Loan Agreement").  *See* Amended Complaint, Ex. 5.  Plaintiff's loan was collateralized by 8.70722001 Bitcoin ("BTC").  *Id.*  The contracted loan-to-value ratio ("LTV") on Plaintiff's loan was 50.00%, with a margin call LTV trigger of 65.00% and a liquidation LTV trigger of 80.00%.  *Id.*

19.    At the time Plaintiff entered into the Loan Agreement, Loans Terms of Use Version 7 was in effect.  *See Declaration of Alex Mashinsky, Chief Executive Officer of Celsius Network LLC, Providing Terms of Use Dating Back to February 18, 2018* [Case No. 22-10964, Dkt. 393] (the "Terms of Use Declaration"), at ¶ 21, p. 857 (noting that Terms of Use Version 7 was in effect from December 8, 2020 to June 26, 2021).  Plaintiff does not include the full Terms of Use Version 7 in his Amended Complaint and selectively cites language from those Terms sparingly in support of his claims.  *See* Amended Complaint, ¶¶ 37, 85.  Plaintiff does not deny that he agreed to the Loan Terms of Use when he initiated his retail loan with Celsius.

20.    Loan Terms of Use Version 7 articulates a clear picture of the financial relationship between retail borrowers and Celsius, including the unambiguous transfer of ownership of digital

assets provided as collateral in support of a retail loan.  Specifically, Terms of Use Version 7

provide:

> In consideration for the Loan, **you grant Celsius the right, subject to applicable law, without further notice to you, to hold the Digital Assets provided as Collateral in Celsius' name or in another name**, and to pledge, re-pledge, hypothecate, rehypothecate, sell, lend, or otherwise transfer or use any amount of such Digital Assets, separately or together with other property, **with all attendant rights of ownership**, and for any period of time, and without retaining in Celsius' possession and/or control a like amount of Digital Assets or any other monies or assets, and to use or invest such Digital Assets at Celsius' own risk.

Terms of Use Declaration, at 870 (emphasis added).  Those Terms further provide that the

borrower "may not be able to exercise certain rights of ownership" over digital assets pledged as

collateral.  *Id.*

21.     Furthermore, although the Loan Terms of Use permit a borrower to *request*

refinancing of a loan if the LTV drops below half of the initial LTV in the loan terms sheet, Celsius

is under no obligation to grant such requests.  *See id.* at 864 ("Celsius will NOT be obligated to

accept any Refinancing Request. … Any Refinancing Request must be made in writing, and **will**

**only be binding on Celsius upon Celsius' notice to you in writing of its acceptance of your**

**request**." (emphasis added)).  Thus, contrary to Plaintiff's allegations, there was no unilateral right

to initiate a reverse margin call on Plaintiff's loan, and Celsius was not obligated to honor any such

request.  *See* Amended Complaint, ¶ 84.

22.     Pursuant to the Loan Terms of Use, Celsius was entitled to exercise its rights to

liquidate a borrower's collateral in satisfaction of a loan upon the occurrence of any Default Event,

including, but not limited to, a "fail[ure] to respond to a Margin Call within the deadline provided

therein."  Terms of Use Declaration at 865.  Upon such default, Celsius was entitled to declare

payable any principal and interest amounts, as well as "[r]ealize all or part of the Collateral in

accordance with the applicable contractual terms." *Id.* at 866.  There is no notice requirement prior to a liquidation event.  *Id.*

23.     The relationship between the borrower and Celsius established by the Loan Terms of Use is governed by Delaware law.  *Id.* at 873.

24.     Plaintiff alleges that on October 6 and November 8, 2021, he contacted Celsius to initiate a reverse margin call on his loan collateral and that he received no response from Celsius. *See* Amended Complaint, ¶¶ 15–16.  Plaintiff does not include any facts regarding his purported LTV at that time or his entitlement to a reverse margin call under the Loan Agreement.

25.     On June 13, 2022, Celsius initiated a margin call on Plaintiff's account when his LTV rose above the 65% threshold. *Id.* at ¶ 17.  Plaintiff alleges that he "attempt[ed] to resolve the matter" prior to liquidation but provides no facts supporting that statement.  *Id.*

26.     On June 15, 2022, Plaintiff's LTV rose above the 80% liquidation threshold, and pursuant to the Loan Agreement's terms and conditions,[3] Celsius liquidated his loan at an LTV of 80.59%.  *See id.*, Ex. 5.  Thereafter, 1.433533 BTC in excess, unliquidated collateral was returned to Plaintiff's Earn Account.  *See id.* at ¶ 87, Ex. 8.

## LEGAL STANDARD

27.     Federal Rule of Civil Procedure 12(b)(6), made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7012, states that a cause of action must be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

---

[3]   Plaintiff's Exhibit E includes a link to Celsius's Loan Terms and Conditions.  *See* Amended Complaint, Ex. 5 (providing a link to *Celsius Loan Terms and Conditions*, available at https://api.celsius.network/api/v3/web/document/loan-terms-and-conditions/).  Pursuant to those Terms and Conditions, Plaintiff agreed to maintain certain LTV thresholds and acknowledged that failure to maintain such thresholds in response to a margin call entitled Celsius to exercise its rights under the agreement, including liquidation.  Plaintiff further agreed that Celsius was not obligated to provide any notice prior to a liquidation event.

To survive a Rule 12(b)(6) motion, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The "plausibility standard" requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted).

28.     Although a *pro se* litigant's complaint "must be construed liberally," such complaint must still "state a plausible claim for relief." *Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) (per curiam). "[D]ismissal [of a *pro se* complaint] under Rule 12(b)(6) is proper if the complaint lacks an allegation regarding an element necessary to obtain relief…." *Joyner v. Greiner*, 195 F. Supp. 2d 500, 503 (S.D.N.Y. 2002) (internal quotation marks omitted). Thus, "the duty to liberally construe a [*pro se*] plaintiff's complaint [is not] the equivalent of a duty to re-write it." *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (internal quotation marks omitted).

29.     On a Rule 12(b)(6) motion to dismiss, courts may consider "facts stated on the face of the complaint, … documents appended to the complaint or incorporated in the complaint by reference, and … matters of which judicial notice may be taken." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (internal quotation marks omitted). "To be incorporated by reference, the complaint must make a clear, definite and substantial reference to the documents." *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (internal quotation marks omitted).

30.     Courts also may "take judicial notice of matters of public record, including filings in related lawsuits." *Am. Tissue, Inc. v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 351 F. Supp. 2d 79, 96 n.17 (S.D.N.Y. 2004) (citations omitted). Bankruptcy courts may take judicial notice of

prior decisions or filings in the same bankruptcy case. *See, e.g.*, *In re AMR Corp.*, 567 B.R. 247, 250 & n.7 (Bankr. S.D.N.Y. 2017) (taking judicial notice of prior decisions in "several different adversary proceedings in th[e] bankruptcy" for purposes of considering a motion to dismiss an adversary complaint); *In re 477 W. 142nd St. Hous., Dev. Fund Corp.*, No. 15-12178, 2020 WL 3067733, at *7 (Bankr. S.D.N.Y. June 8, 2020) (similar).

31.    Finally, courts may consider documents that although not expressly referenced in the complaint, are "nevertheless 'integral' to the complaint." *Goel*, 820 F.3d at 559. "A document is integral to the complaint 'where the complaint relies heavily upon its terms and effect.'" *Id.* (citation omitted). The "integral" material is typically "a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason—usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim—was not attached to the complaint." *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006). Consideration of such "integral" documents "prevents plaintiffs from generating complaints invulnerable to Rule 12(b)(6) simply by clever drafting." *Id.*

32.    Federal Rule 9(b), made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7009, requires plaintiffs to plead claims involving fraud or mistake "with particularity." Fed. R. Civ. P. 9(b). A complaint alleging fraud must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *DiMuro v. Clinique Laboratories, LLC*, 572 Fed. App'x 27, 30 (2d Cir. 2014) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)). "Allegations that are conclusory or unsupported by factual assertions are insufficient." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir.

2007).  Although malice, intent, or knowledge can be alleged generally, plaintiffs cannot "base

claims of fraud on speculation and conclusory allegations," but rather must "allege facts that give

rise to a strong inference of fraudulent intent."  *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d

Cir. 2006).  Claims alleging fraudulent misrepresentation and fraudulent inducement are subject

to Rule 9(b)'s heightened pleading standard.  *See, e.g.*, *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells

Fargo Sec., LLC*, 797 F.3d 160, 179 (2d Cir. 2015) ("[T]he complaint fails to plead a fraudulent

misrepresentation with the particularity required by Rule 9(b) ….."); *Cyganowski v. Beechwood Re

Ltd.*, 427 F. Supp. 3d 395, 441 (S.D.N.Y. 2019) ("A fraudulent inducement claim is also subject

to the heightened pleading standard of Rule 9(b).").  *Pro se* plaintiffs are not exempt from Rule

9(b)'s heightened pleading standards.  *See Phillips v. Reed Grp., Ltd.*, 955 F. Supp. 2d 201, 241

(S.D.N.Y. 2013) ("While the pleadings of a *pro se* plaintiff must be construed liberally, a *pro se*

complaint must still meet the particularity requirements of Rule 9(b).").

## ARGUMENT

**I.    The Earn Order Requires Plaintiff To Bring His Damages Claims Through the Claims Allowance Process**

33.    After extensive briefing, an evidentiary hearing, and nearly a month of deliberation,

this Court issued its Earn Order on January 4, 2023, thereby establishing Celsius's presumptive

ownership over the largest asset class in these chapter 11 cases and outlining an orderly claims-

allowance process.   Specifically, this Court held that: (a) assets in Earn Accounts were

"presumptively property of the estate and not property of the Account Holders"; and (b) the amount

of unsecured claims, "including [damages claims for] breach of contract, fraud or other theories of

liability," would be subject to determination through the claims allowance process.  Earn Order at

30.  Plaintiff alleges ownership over the excess collateral currently in his Earn Account and asserts

related statutory and common-law damages claims.  Because the Court addressed both issues in its Earn Order, it should dismiss Plaintiff's claims pursuant to the law-of-the-case doctrine.

34.     The "law of the case" doctrine states that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Pescatore v. Pan Am. World Airways, Inc.*, 97 F.3d 1, 7–8 (2d Cir. 1996); *see also In re PCH Assocs.*, 949 F.2d 585, 592 (2d Cir. 1991) ("Under the law of the case doctrine, a decision on an issue of law made at one stage of a case becomes binding precedent to be followed in subsequent stages of the same litigation.").  The doctrine is informed "by considerations of fairness to the parties, judicial economy, and the societal interest in finality." *United States v. Carr*, 557 F.3d 93, 102 (2d Cir. 2009); *see also In re PCH Assocs.*, 949 F.2d at 592.  Courts apply the law-of-the-case doctrine "when the[] prior decisions in an ongoing case either expressly resolved an issue or necessarily resolved it by implication." *Aramony v. United Way of Am.*, 254 F.3d 403, 410 (2d Cir. 2001).  Absent "compelling reasons counsel[ing] otherwise," "a court should adhere to its earlier decisions in subsequent stages of litigation." *In re Motors Liquidation Co.*, 585 B.R. 708, 725 (Bankr. S.D.N.Y. 2018) (Glenn, J.).

35.     Bankruptcy courts in this district have applied the law-of-the-case doctrine to dismiss adversary complaints threatening duplicative and inefficient processes.  In *In re AMR Corp.*, for instance, the bankruptcy court dismissed claims in an adversary where it found that the claims were "simply a thinly veiled attempt to make an end run around the prior rulings [in the other adversary proceeding]".  *See* 567 B.R. at 255.  The court noted that those prior rulings "reflected a concern about the duplication of claims and inefficiency in the litigation of these disputes." *Id.* at 257.

36.     Similarly, in *In re 477 W. 142nd St. Hous., Dev. Fund Corp.*, the bankruptcy court

dismissed claims in an adversary proceeding that raised issues and arguments "substantially

similar" those previously considered and rejected by the court.  2020 WL 3067733, at *11.  There,

the adversary plaintiff filed a "rejection motion" objecting to the confirmation of the final

bankruptcy plan, despite not previously appealing the bankruptcy court's confirmation order.  *Id.*

at *5.  The bankruptcy court denied the rejection motion, and the plaintiff appealed to the district

court and Second Circuit, both of which denied the motion.  *Id.* at *5–*6.  The plaintiff then filed

an adversary complaint, "again bas[ing] her arguments on the same issues that were previously

raised and litigated" thrice over.  *Id.* at *11.  Because the adversary proceeding formed "part of the

same 'case'" as the prior rulings, and because the complaint was "substantially similar" to the

rejection motion, the bankruptcy court applied the law-of-the-case doctrine to dismiss the

plaintiff's adversary proceeding.  *See id.* at *12.

37.     Here, the Earn Order held that cryptocurrency assets placed into Earn Accounts

were Celsius's property and "became property of the Debtors' bankruptcy estates" on the Petition

Date.  Earn Order at 4.  The Order further held that Account Holders' damages claims, including

"fraud or other theories of liability," are subject to determination through the claims allowance

process.  *Id.* at 30.  The Court explicitly identified "violations of state law," as well as "fraudulent

inducement into the contract, fraudulent conveyance, breach of contract, and that the contract was

unconscionable," as claims that were "explicitly reserved for the claims resolution process."  *Id.*

at 43.

38.     Plaintiff's claims fall squarely within the issues decided in the Earn Order.  Upon

the liquidation of Plaintiff's collateral in satisfaction of his loan, Plaintiff's remaining collateral

transferred to his Earn Account, where it remained through the Petition Date.  *See* Amended

Complaint, ¶ 87 ("This left a Bitcoin balance of 1.433533 and was immediately deposited into an earned [sic] account instead of a custody account."); *id.* at Ex. 8.  Plaintiff mistakenly claims ownership over the collateral deposited into his Earn Account and seeks return of that collateral.  The Earn Order conclusively establishes the Debtors' ownership of assets in Plaintiff's Earn Account, however, so these claims must be dismissed pursuant to the law of the case.

39.     In connection with his claims of ownership, Plaintiff asserts several statutory and common law damages claims, including consumer fraud, deceptive practices, fraudulent misrepresentation, breach of contract, and unjust enrichment.[4]  The law of the case bars those claims from going forward in this proceeding and requires they be adjudicated through the claims allowance process instead.  Plaintiff should not be allowed to "make an end run around" that claims process and augment his individual recovery, to the detriment of other similarly situated creditors.  Rather, like all other Account Holders, Plaintiff must litigate his damages claims through the claims resolution process, and nothing in the Amended Complaint warrants a different result.

40.     To be clear, the Debtors do not seek to prevent Plaintiff—or any other creditor—from litigating his damages claims, including any fraud or other statutory claims.  Given the need for uniformity and equity during the bankruptcy process, however, the Court ordered that such claims be reserved for the claims resolution process.  During that process, Plaintiff—and all other similarly situated creditors—will have "every opportunity to have a full hearing on the merits of

---

[4]     Though Plaintiff may argue that his statutory and common-law claims are based on the administration of his Borrow Account, the precedent set by the Earn Order nonetheless applies to bar those claims in an adversary proceeding.  *See Aramony*, 254 F.3d at 410 (holding that the law-of-the-case doctrine applies "when the[] prior decisions in an ongoing case either expressly resolved an issue *or necessarily resolved it by implication*" (emphasis added)).  The clear implication of the Earn Order decision is that equity and efficiency require the litigation of damages claims through a unified claims allowance process.  Borrow Account Holders should not be permitted to pursue damages claims through an adversary proceeding where Earn Account Holders are required to pursue the exact same claims through the claims-allowance process.  *See Carr*, 557 F.3d at 102 (noting that the law of the case is informed, in part, "by considerations of fairness to the parties").

the[ir] arguments." Earn Order at 45.  Before then, however, the law of the case precludes some individuals from seeking to jump the line, litigate their claims, and recover 100% of their assets, to the detriment other creditors.

## II.    Even if Plaintiff's Damages Claims Are Not Barred, He Has Failed to State a Claim Upon Which Relief May Be Granted

41.    Even if Plaintiff's damages claims are not barred by the law of the case, Plaintiff nevertheless has failed to state a claim with respect to any of those causes of action.  First, Plaintiff has entirely failed to allege any Celsius conduct constituting breach of the Loan Agreement. Moreover, Plaintiff has failed to allege facts sufficient to support his common-law and statutory fraud claims.  As such, Plaintiff's damages claims must be dismissed under Rule 12(b)(6).

### A.    Celsius Did Not Breach Its Loan Agreement with Plaintiff

42.    Plaintiff's tenth claim for relief seeks damages for breach of the Loan Agreement between himself and Celsius.  Because Plaintiff does not prove that Celsius in any way violated the terms of that Agreement, this claim fails as a matter of law.

43.    Under Delaware law, the three basic elements for breach of contract are: "(1) a valid contract, (2) breach of that contract, and (3) damages resulting from the breach."  *Estate of Portnick v. Countrywide Home Loans, Inc.*, 282 F.R.D. 81, 90 (D. Del. 2012).  A "breach" equates to "[f]ailure, without legal excuse, to perform any promise which forms the whole or part of a contract."  *Meso Scale Diagnostics, LLC v. Roche Diagnostics GmbH*, 62 A.3d 62, 77 (Del. Ch. 2013) (internal quotation marks omitted).  In determining the parties' contractual rights and obligations, courts begin with the agreement itself.  *See, e.g.*, *Georgetown Crossing LLC v. Ruhl*, No. 589-S, 2006 WL 3720134, at *6 (Del. Ch. Dec. 5, 2006) ("The Agreement is the appropriate starting point for determining the rights and duties of the parties.").

44.     On a Rule 12(b)(6) motion, a "breach of contract claim must be dismissed where the unambiguous terms of the contract do not support a plaintiff's claim." *Spinelli v. Nat'l Football League*, 96 F. Supp. 3d 81, 131 (S.D.N.Y. 2015); *see also Soroof Trading Dev. Co. v. GE Fuel Cell Sys. LLC*, 842 F. Supp. 2d 502, 509–10 (S.D.N.Y. 2012).  In other words, the complaint must "identify, in [a] non-conclusory fashion, the specific terms of the contract that a defendant has breached," or else it "must be dismissed." *Hudson Neurosurgery, PLLC v. UMR, Inc.*, No. 20-CV-9642, 2022 WL 902107, at *4 (S.D.N.Y. Mar. 28, 2022); *see also Negrete v. Citibank, N.A.*, 187 F. Supp. 3d 454, 468 (S.D.N.Y. 2016), *aff'd*, 795 Fed. App'x 42 (2d Cir. 2019).

45.     As noted above, the parties' relationship is governed by Loan Terms of Use Version 7. *See supra* ¶ 19.  Plaintiff alleges that Celsius breached that Agreement by not executing a reverse margin call on Plaintiff's excess loan collateral on two occasions.  *See* Amended Complaint, ¶¶ 14–15.  Plaintiff also alleges that Celsius breached the Loan Agreement by fraudulently misrepresenting the treatment of collateral on the Celsius platform and by failing to return collateral following liquidation. *Id.* at ¶¶ 83, 85.  Plaintiff states that because of these alleged breaches, he has "incurred loss, suffered significant harms, including, but not limited to, monetary damages, and litigation costs." *Id.* at ¶ 89.

46.     *First*, Plaintiff cannot maintain a breach-of-contract claim based on allegations that Celsius "materially breached the express and implied terms of the Loan Agreement by … misrepresenting how the Collateral would be treated by the Debtors on the Celsius Platform." *Id.* at ¶ 83; *see id.* at ¶¶ 59–68.  Plaintiff identifies no express terms of the Loan Terms of Use that state that he retained title or ownership of the collateral.  Nor can he, as the Terms clearly and unambiguously transfer ownership of loan collateral to Celsius.  *See* Terms of Use Declaration at 870 ("In consideration for the Loan, you grant Celsius the right, subject to applicable law, without

further notice to you, to hold the Digital Assets provided as Collateral in Celsius' name or in another name, and to pledge, re-pledge, hypothecate, rehypothecate, sell, lend, or otherwise transfer or use any amount of such Digital Assets, separately or together with other property, with all attendant rights of ownership….").   Rather, Plaintiff is left arguing that selective, extra-contractual statements made by Celsius representatives outside the context of any loan agreement or negotiation with any customer created an "implied" contractual obligation directly contradictory to the clear and unambiguous terms of the uniform Loan Terms of Use.  This is not the law.  *See, e.g.*, *CLP Toxicology, Inc. v. Casla Bio Holdings LLC*, Nos. 2018-0783-PRW & 2019-0401-PRW, 2021 WL 2588905, at *12 (Del. Ch. June 14, 2021) ("An implied contractual obligation cannot flow from matters expressly addressed in a written contract."); *Related Westpac LLC v. JER Snowmass LLC*, No. 5001-VCS, 2010 WL 2929708, at *6 (Del. Ch. July 23, 2010) ("A court cannot imply an obligation inconsistent with the parties' express agreement….").  Plaintiff has therefore failed to allege any breach of the Loan Agreement with respect to Celsius's treatment of his loan collateral.

47.    ***Second***, Plaintiff fails to identify any right under the Loan Terms of Use to a reverse margin call.  As a factual matter, Plaintiff does not include any allegations that his LTV dropped to a level entitling him to even request a refinancing of his loan.  *See* Terms of Use Declaration at 864 (permitting borrowers to *request* refinancing of a loan only if the LTV drops to less than half of the initial LTV stated in the loan Term Sheet).  Moreover, even if Plaintiff's LTV had dropped to one half of his original ratio (i.e., 25%), the Loan Terms of Use merely provided Plaintiff with the ability to *request* a refinancing.  *Id.*  Celsius was under no obligation to actually refinance the loan.  *See id.* ("Celsius will NOT be obligated to accept any Refinancing Request.").  Thus,

Plaintiff has failed to state a claim for breach of the Loan Agreement based on Celsius's refusal to honor his reverse margin call request.

48.    **Third**, Plaintiff fails to establish that Celsius breached the Loan Terms of Use by not returning his excess collateral. *See* Amended Complaint, ¶ 85.  In support of his allegations, Plaintiff cites a provision of the Terms stating: "Both you and/or Celsius may, for any or no reason, terminate the Loan within thirty (30) days prior notice in writing to the other party." *Id.*  However, this provision says nothing about the return of collateral, let alone an unqualified right to such return, as Plaintiff seemingly expects.  Indeed, in that same section, the Terms state only that Celsius "shall release all remaining Collateral to your Celsius Account." Terms of Use Declaration, at 861.  At most, then, the Loan Terms of Use required Celsius to return any excess collateral to Plaintiff's Earn Account upon liquidation of his loan, which it did.  *See* Amended Complaint, ¶ 87 (noting that after liquidation of the loan collateral, "[t]his left a Bitcoin balance of 1.433533 and was [*sic*] immediately deposited into an earn[] account instead of a custody account").  Plaintiff's claims that Celsius breached the Loan Agreement are belied by the Loan Terms of Use and his own pleading.

49.    Because Plaintiff has not alleged any conduct violating the Loan Agreement, or any other agreement between the parties, he has failed to state a claim for breach of contract.

B.    <u>Plaintiff Does Not Have Any Viable Fraud Claims</u>

50.    Plaintiff alleges three fraud-related causes of action with identical underlying factual allegations: deceptive trade practices, consumer fraud, and fraudulent misrepresentation. Because Plaintiff fails to adequately plead entitlement under either the statutory or common-law claims, they must be dismissed.

1. <u>Plaintiff Has Not Stated a Claim for Consumer Fraud or Deceptive Trade Practices</u>

51.     Plaintiff does not identify any particular statutory scheme under which his consumer fraud or deceptive trade practices causes of action are alleged. The Debtors therefore assume, because Plaintiff brings his claim in the Southern District of New York, he intended to allege such claims under New York's General Business Law Section 349, which prohibits deceptive acts and practices.[5]

52.     To state a claim under section 349, a plaintiff must prove three elements: (1) "that the challenged act or practice was consumer-oriented"; (2) "that it was misleading in a material way"; and (3) "that the plaintiff suffered injury as a result of the deceptive act." *C=Holdings B.V. v. Asiarim Corp.*, 992 F. Supp. 2d 223, 247 (S.D.N.Y. 2013). Though plaintiffs need not plead justifiable reliance or a defendant's intent to deceive under section 349, "a plaintiff must plausibly allege he or she was exposed to the deceptive conduct in the first instance." *In re USAA Data Sec. Litig.*, No. 21 CV 5813, 2022 WL 3348527, at *10 (S.D.N.Y. Aug. 12, 2022); *see also Rand v. Travelers Indemnity Co.*, No. 21 CV 10744, 2022 WL 15523722, at *10 (S.D.N.Y. Oct. 27, 2022) (same). Moreover, the New York Court of Appeals has adopted an "objective definition of deceptive acts and practices, whether representations or omissions, limited to those likely to mislead a reasonable consumer acting reasonably under the circumstances." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995). Because the test is objective, courts can determine "as a matter of law" that an allegedly deceptive statement

---

[5]     Because New York does not have an independent statute prohibiting "consumer fraud," the Debtors treat Plaintiff's consumer fraud and deceptive trade practices claims as one claim arising under N.Y. Gen. Bus. Law § 349 (2023).

"would not have misled a reasonable consumer." *Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 500 (2d Cir. 2020).

53.     With respect to injury, "New York courts have rejected the notion that a defendant's deception alone—in other words, allegations of pecuniary loss arising solely from the purchase of the defendant's product—may suffice to plead 'actual injury' for a Section 349 claim." *Preira v. Bancorp Bank*, 885 F. Supp. 2d 672, 676 (S.D.N.Y. 2012); *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 56 (1999) (rejecting the argument that "consumers who buy a product that they would not have purchased, absent a manufacturer's deceptive commercial practices, have suffered an injury under General Business law § 349"). Plaintiffs must therefore plead "something more than the defendant's deception" to state a claim. *Preira*, 885 F. Supp. 2d at 677; *see Baron v. Pfizer, Inc.*, 42 A.D.3d 627, 629 (N.Y. App. Div. 2007) (requiring plaintiffs to plead something more than "deception as both act and injury," such as that "the price of the product was inflated as a result of defendant's deception or that use of the product adversely affected plaintiff's health," to state a claim under section 349).

54.     Courts have recognized that "[t]here can be no claim for deceptive acts or practices, however, when the alleged deceptive practice was fully disclosed." *Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 404 (S.D.N.Y. 2010) (quoting *Watts v. Jackson Hewitt Tax Serv. Inc.*, 579 F. Supp. 2d 334, 346 (E.D.N.Y. 2008)); *Millennium Health, LLC v. EmblemHealth, Inc.*, 240 F. Supp. 3d 276, 286 (S.D.N.Y. 2017) (quoting *Chiste*). Thus, a plaintiff cannot base a claim for misrepresentation under section 349 on matters explicitly disclosed in a written agreement. *See Tardibuono-Quigley v. HSBC Mortg. Corp.*, No. 15-cv-6940(KMK), 2017 WL 1216925, at *15 (S.D.N.Y. Mar. 30, 2017) ("A GBL § 349 claim does not lie when the alleged deceptive practice … was a matter explicitly disclosed in and permitted under … [a] written agreement." (quoting

*Asimov v. Trident Media Grp., LLC*, No. 654129/2013, 2014 WL 4109705, at *4 (N.Y. Sup. Ct. Aug. 15, 2014)).

55.    Here, Plaintiff alleges that the Debtors "misrepresented material facts concerning the transfer of the Collateral to the Celsius Platform," including through statements made by former Celsius CEO, Alex Mashinsky.  Amended Complaint, ¶¶ 44–45.  Plaintiff cites in support a number of specific statements made by Mashinsky and others referring to digital assets in customer accounts as "your" coins or allegedly implying customer ownership over coins transferred to the Platform.  *See id.* at ¶¶ 25–28.  Plaintiff also references other "false and misleading claims" related to Celsius's "financial health," its "compliance with applicable laws and regulations," its "ability to meet obligations," its "ability to safeguard customer assets," and its "revenue sources."  *Id.* at ¶ 47.  Plaintiff wholly fails to plead any statements made by Celsius regarding any of these categories, however.[6]

56.    ***First***, Plaintiff cannot plausibly allege that the purported misstatements regarding treatment of collateral were deceptive because the express terms of the Loan Terms of Use clearly and unambiguously detailed the transfer ownership of such assets to Celsius.  *See supra* ¶ 20.  Any oral statements made by Celsius employees regarding this collateral were belied by those clear, written Terms, and any reasonable consumer viewing those Terms would be on notice of their contents.  Plaintiff therefore cannot "plausibly allege that a significant portion of the general consuming public or of targeted customers, acting reasonably in the circumstances, could be

---

[6]    Plaintiff alleges one general statement from a Celsius Ask Mashinsky Anything YouTube video ("AMA") theorizing about the Company's ability to sustain a hypothetical run on the bank.  Such a generalized, forward-looking statement is, at most, puffery and cannot for the basis for a section 349 claim.  *See, e.g.*, *Kommer v. Ford Motor Co.*, No. 17-cv-296 (LEK/DJS), 2017 WL 3251598, at *3 (N.D.N.Y. July 28, 2017) (noting that puffery is a "generalized or exaggerated statement[] such that a reasonable consumer would not interpret the statement as a factual claim upon which he or she could rely" and that puffery "is not actionable under [New York General Business Law] sections 349 or 350" (quoting *Hubbard v. Gen. Motors Corp.*, No. 95-cv-4362, 1996 WL 274018, at *6 (S.D.N.Y. May 22, 1996))).

misled," and cannot sustain a claim that the alleged misstatements were deceptive.  *Twohig v. Shop-Rite Supermarkets, Inc.*, 519 F. Supp. 3d 154, 160 (S.D.N.Y. 2021); *see Tardibuno-Quigley*, 2017 WL 1216925, at *15 ("[A] GLB § 349 claim does not lie when the alleged deceptive practice … was a matter explicitly disclosed in and permitted under … [a] written agreement.").

57.   **Second**, even if the alleged misstatements can be considered deceptive, Plaintiff does not specifically allege when he was exposed to such statements or considerations of such statements in creating a Celsius account or initiating his Loan Agreement.  Plaintiff only states that he entered into his Loan Agreement "[i]n reasonable reliance upon the Debtors' misrepresentations."  Amended Complaint, ¶ 30.  This conclusory statement is insufficient to state a claim under section 349.  *See In re USAA Data Sec. Litig.*, 2022 WL 3348527, at *10 (holding with respect to a section 349 claim that "a plaintiff must plausibly allege he or she was exposed to the deceptive conduct in the first instance").

58.   **Third**, Plaintiff's allegations of injury—amounting only to a claim that he entered into the Loan Agreement because of the alleged misrepresentations—are insufficient to state a claim under section 349.  *See* Amended Complaint, ¶ 30;[7] *see Preira*, 885 F. Supp. 2d at 676 ("New York courts have rejected the notion that a defendant's deception alone—in other words, allegations of pecuniary loss arising solely from the purchase of the defendant's product—may suffice to plead 'actual injury' for a Section 349 claim.").  Because Plaintiff has not pled more than "deception as both act and injury," he has failed to state a claim under section 349.  *Baron*, 42 A.D.3d at 629.

---

[7]   The Amended Complaint also contains a conclusory and non-descript allegation that Plaintiff "incurred losses, suffered harm, including monetary damages, and litigation costs."   Amended Complaint, ¶ 48, but such generalized statements are not sufficient to show "actual injury."

2.      Plaintiff Has Not Stated a Claim for Fraudulent Misrepresentation[8]

59.     In addition to his statutory misrepresentation claims, Plaintiff asserts a common-law claim for fraudulent misrepresentation.  "The elements of common-law fraud and intentional misrepresentation under New York law are the same."  *B&M Linen, Corp. v. Kannegiesser, USA, Corp.*, 679 F. Supp. 2d 474, 480 (S.D.N.Y. 2010).   To state a claim for fraudulent misrepresentation, a plaintiff must prove: "(1) the defendant made a material false representation; (2) the defendant intended to defraud the plaintiff thereby; (3) the plaintiff reasonably relied upon the representation; and (4) the plaintiff suffered damage as a result of such reliance." *Indep. Ord. of Foresters v. Donald, Lufkin & Jenrette, Inc.*, 157 F.3d 933, 940 (2d Cir. 1998).  "It is beyond dispute that fraudulent misrepresentation claims sound in fraud and are subject to Rule 9(b)'s heightened pleading standard."  *Riker, Danzig, Scherer, Hyland & Perretti, LLP v. Premier Cap., LLC*, No. 15-CV-8293, 2016 WL 5334980, at *5 (S.D.N.Y. Sept. 22, 2016).  To adequately plead a fraud or fraudulent misrepresentation claim, the plaintiff must "explain how the

---

[8]     Under New York's choice-of-law rules, New York substantive law applies where there is no conflict between the applicable laws of the relevant jurisdictions.  *See Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 672 F.3d 155, 157 (2d Cir. 2012) (per curiam) ("If no actual conflict exists, and if New York is among the relevant jurisdictions, the court may simply apply New York law.").  Here, Plaintiff is a domiciliary of Colorado, and Debtor Celsius Network Lending LLC, in addition to several other Debtor entities, is incorporated in Delaware and headquartered in New Jersey.  The Debtors' business also operated through New York, and many of the AMAs and other allegedly fraudulent misstatements occurred in New York.  Because there is no conflict between these jurisdictions with respect to fraudulent misrepresentation claims, New York law applies.  *Compare Bernardi v. Spyratos*, 79 A.D.3d 684, 687 (N.Y. App. Div. 2010) ("To recover damages for fraudulent misrepresentation, a plaintiff must prove (1) a misrepresentation or an omission of material fact which was false and known to be false by the defendant, (2) the misrepresentation was made for the purpose of inducing the plaintiff to rely upon it, (3) justifiable reliance of the plaintiff on the misrepresentation or material omission, and (4) injury.") *with Barnes v. State Farm Mutual Auto. Ins. Co.*, 497 P.3d 5, 11 (Colo. App. 2021) ("To establish a claim for fraudulent misrepresentation, a plaintiff must prove that (1) the defendant made a fraudulent misrepresentation of material fact; (2) the plaintiff relied on the misrepresentation; (3) the plaintiff had a right to rely on or was justified in relying on the misrepresentation; and (4) the plaintiff's reliance resulted in damages."); *Wiatt v. Winston & Strawn LLP*, 838 F. Supp. 2d 296, 315–16 (D.N.J. 2012) ("To establish a claim for fraudulent misrepresentation or omission under New Jersey law, a plaintiff must meet five requirements: '(1) a material representation [or omission] of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages.'" (quoting *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610 (1997))).

misrepresentations were fraudulent and plead those events which give rise to a strong inference that the defendant had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth." *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 191 (2d Cir. 2001) (internal quotation omitted). Moreover, "[s]tatements as to future or contingent events, to expectations or probabilities, or as to what will or will not be done in the future, do not constitute misrepresentations, even though they may turn out to be wrong." *Mohegan Lake Motors, Inc. v. Maoli*, 559 F. Supp. 3d 323, 342 (S.D.N.Y. 2021); *see also Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir. 1994) ("The failure to fulfill a promise to perform future acts is not ground for a fraud action unless there existed an intent not to perform at the time the promise was made."). Similarly, "absent intent to deceive, 'statements of opinion cannot constitute fraud.'" *Zappin v. Comfort*, No. 18-cv-01693, 2022 WL 6241248, at *15 (S.D.N.Y. Aug. 29, 2022) (quoting *Bailey v. N.Y. Law Sch.*, No. 16-cv-4283, 2017 WL 6611582, at *10 (S.D.N.Y. Dec. 27, 2017)); *see also Tolin v. Standard & Poor's Fin. Servs., LLC*, 950 F. Supp. 2d 714, 722 (S.D.N.Y. 2013) (holding that to state a claim for fraud, "a plaintiff must allege that the holder of the opinion reflected in the rating did not believe the opinion at the time it was made").

60.    With respect to reliance, a plaintiff must demonstrate "actual reliance," meaning that he must assert that he "saw, read, or otherwise noticed" an alleged misrepresentation. *In re Fyre Festival Litig.*, 399 F. Supp. 3d 203, 217 (S.D.N.Y. 2019) (quoting *Am. Fin. Int'l Grp.-Asia, LLC v. Bennett*, No. 05-cv-8988, 2007 WL 1732427, at *9 (S.D.N.Y. June 14, 2007)); *see also Ramiro Aviles v. S&P Glob., Inc.*, 380 F. Supp. 3d 221, 291 (S.D.N.Y. 2019) (holding that a complaint alleging fraud "must allege with particularity that [a plaintiff] actually relied upon the [defendant's] supposed misstatements"). Statements of reliance that are "conclusory and generalized" are not sufficient to plead actual reliance. *In re Fyre Festival Litig.*, 399 F. Supp. 3d

at 216 (holding that statements such as "Plaintiffs and other Class members relied on Defendants'

misrepresentations and omissions" were not sufficient to plead actual reliance).

61.    A plaintiff also must establish that his reliance on a statement was "justifiable under

the circumstances." *SKR Res. Inc. v. Players Sports, Inc.*, 938 F. Supp. 235, 240 (S.D.N.Y. 1996).

Under New York law, a plaintiff cannot establish justifiable reliance "when, by the exercise of

ordinary intelligence [he] could have learned of the information [he] asserts was withheld." *Daniel*

*v. Mondelez Int'l, Inc.*, 287 F. Supp. 3d 177, 199 (E.D.N.Y. 2018) (quoting *Transnational Mgmt.*

*Sys. II, LLC v. Carcione*, No. 14-cv-2151, 2016 WL 7077040, at *8 (S.D.N.Y. Dec. 5, 2016)); *see*

*also Crigger v. Fahnestock & Co.*, 443 F.3d 230, 234 (2d Cir. 2006) ("A plaintiff cannot close his

eyes to an obvious fraud, and cannot demonstrate reasonable reliance without making inquiry and

investigation if he has the ability, through ordinary intelligence, to ferret out the reliability or truth

about an investment."). "New York courts have consistently held that it is not reasonable for a

plaintiff to rely on oral representations from defendant that contradict the express terms of the

agreement." *Fenton v. Criterion Worldwide*, No. 18 Civ. 10224, 2020 WL 1489795, at *6

(S.D.N.Y. Mar. 27, 2020).

62.    Plaintiff's fraudulent misrepresentation claim is deficient in multiple ways.  **First**,

Plaintiff has not adequately pled that the alleged misstatements are actionable misrepresentations.

Plaintiff alleges that the Debtors made fraudulent misrepresentations with respect to: the treatment

and status of loan collateral; the Debtors' financial health; the Debtors' "compliance with

applicable laws and regulations"; the Debtors' "ability to meet obligations"; the Debtors' "ability

to safeguard customer assets"; and the Debtors' "revenue sources." Amended Complaint, ¶¶ 60,

62. Plaintiff only alleges specific statements with respect to two categories, however: the Debtors'

"ability to meet obligations" and the Debtors' treatment of loan collateral. Moreover, Plaintiff fails

to identify the speaker of the single statement regarding the Debtors' "ability to meet obligations." *See id.* at ¶¶ 25–29.  Thus, Plaintiff fails to meet the threshold pleading requirements with respect to all categories of misstatements except the treatment of loan collateral.  *See Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) ("[I]n order to comply with Rule 9(b), 'the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir.1993))).

63.     More fundamentally, the alleged misstatements regarding loan collateral do not constitute fraudulent misrepresentations.   Those alleged statements are forward-looking, contingency-based statements regarding future availability of coins for customers that are not actionable for fraud.  *See Mohegan Motors*, 559 F. Supp. 3d at 342 ("Statements as to future or contingent events, to expectations or probabilities, or as to what will or will not be done in the future, do not constitute misrepresentations, even though they may turn out to be wrong"); Amended Complaint, ¶¶ 25, 26, 28 ("What happens to my coins in the event that Celsius Network goes bankrupt?"; "Whatever you put in, if you put in one Bitcoin, you will be withdrawing one Bitcoin…."; "When they return them, it goes back to the wallet and it's still yours from that wallet.").  In addition to being forward-looking, these statements are clear opinions made for the purposes of advertising Celsius products, and therefore cannot be the basis for a fraudulent misrepresentation claim, absent a particularized showing of intent to defraud.  Plaintiff has failed to make that showing here.  Instead, the Amended Complaint offers only boilerplate allegations that the Debtors "intentionally communicated the inaccurate information to the Borrowers for the purpose of inducing the Borrowers to rely on those misrepresentations."  Amended Complaint, ¶ 64.  These standard recitations are not sufficient to state a claim for fraud under Rule 9(b).  *See,*

*e.g.*, *Caputo*, 267 F.3d at 191 (noting that a plaintiff must "plead those events which give rise to a strong inference that the defendant had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth"); *Tolin*, 950 F. Supp. 2d at 722 (dismissing a common law fraud claim where "[t]he Complaint fail[ed] entirely to allege, let alone with particularity, what S&P's state of mind was at the time it issued the particular ratings at issue in this case").

64.     ***Second***, Plaintiff has not adequately pled that he actually relied on any of the alleged misstatements.  The Amended Complaint does not, for instance, allege that Plaintiff listened to the AMAs or read Alex Mashinsky's Twitter messages.  Rather, Plaintiff offers only "conclusory and generalized" statements that he transferred assets onto the Celsius Platform and initiated a Loan agreement "in reasonable reliance on the Debtors' misrepresentations." *In re Fyre Festival Litig.*, 399 F. Supp. 3d at 216; Amended Complaint, ¶¶ 30, 92.  These boilerplate assertions do not to satisfy the general Rule 8(a) pleading standard, let alone the heightened standard under Rule 9(b).  *See Ramiro Aviles*, 380 F. Supp. 3d at 291 (holding that a complaint alleging fraud "must allege with particularity that [a plaintiff] actually relied upon the [defendant's] supposed misstatements").

65.     ***Third***, even if Plaintiff's allegations of actual reliance were sufficient, which they are not, the fraudulent misrepresentation cause of action still must be dismissed because any such reliance was unreasonable.  As noted above, the Loan Terms of Use clearly and unequivocally provide for the transfer of ownership of deposited collateral to Celsius.  Any reasonable consumer reading those Terms, regardless of oral statements or representations, would appreciate that they transferred ownership of the collateral to Celsius.  Plaintiff cannot use his own ignorance or failure to appreciate those clear Terms to establish justifiable reliance.  *See Daniel*, 287 F. Supp. 3d at 199 (holding that a plaintiff cannot establish a claim for fraud "when, by the exercise of ordinary

intelligence it could have learned of the information it asserts was withheld"); *Fenton v. Criterion Worldwide*, No. 18 Civ. 10224, 2020 WL 1489795, at *6 (S.D.N.Y. Mar. 27, 2020) ("New York courts have consistently held that it is not reasonable for a plaintiff to rely on oral representations from defendant that contradict the express terms of the agreement."). Because any reliance by Plaintiff on any alleged misstatement regarding the treatment of collateral was not justifiable in light of the unambiguous Loan Terms of Use, Plaintiff's claim for fraudulent misrepresentation must be dismissed.

        C.     <u>Plaintiff Has Failed to State a Claim for Unjust Enrichment</u>

      66.    Plaintiff's final claim for relief alleges a cause of action for unjust enrichment. It is axiomatic, however, that quasi-contractual claims, such as unjust enrichment, are "not permitted when an express agreement exists that governs the dispute between the parties." *BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 949 F. Supp. 2d 486, 513 (S.D.N.Y. 2013); *Clark-Fitzpatrick, Inc. v. Long Island R.R.*, 70 N.Y.2d 382, 388 (1987) ("The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter."). "This doctrine clearly bars unjust enrichment claims when both parties to the lawsuit are also parties to the contract itself." *Am. Med. Ass'n v. United Healthcare Corp.*, No. 00 Civ. 2800, 2007 WL 683974, at *9 (S.D.N.Y. Mar. 5, 2007). Because the Loan Agreement between Plaintiff and Celsius is valid and enforceable, Plaintiff cannot maintain a claim for unjust enrichment.

## III.    <u>Plaintiff Is Not Entitled to Any Declaratory Relief</u>

      67.    Plaintiff asserts four causes of action seeking declaratory relief. These claims all fail as a matter of law.

A.      Plaintiff's Unliquidated Collateral in His Earn Account is Property of the Estate

68.      Plaintiff's first claim for relief seeks a declaratory judgment that the collateral is not property of the Debtor's Estate.  This claim fails as a matter of law for several reasons.  ***First***, the parties' rights under the Loan Agreement will be adjudicated as part of Plaintiff's breach of contract claim.  "[C]ourts in this Circuit routinely dismiss requests for declaratory judgment when the parties' rights will be adjudicated through a breach of contract claim in the same action." *Optanix, Inc. v. Alorica Inc.*, No. 20-cv-09660-GHW, 2021 WL 2810060, at *3 (S.D.N.Y. July 6, 2021).  ***Second***, as explained above, the Loan Agreement unambiguously transferred ownership of collateral posted in support of a retail loan to Celsius, so this claim fails on its face.  ***Third***, to the extent Plaintiff is seeking a declaratory judgment as to any excess, unliquidated collateral, those assets were deposited into Plaintiff's Earn account.  The Court has already found that Earn assets are property of the bankruptcy estate.  Earn Order at 45; *see also supra* Section I.  Therefore, this claim should be dismissed.

B.      Plaintiff's Loan Is Not Entitled to Section 363(o) Protection

69.      Plaintiff's third claim for relief seeks declaratory judgment that his loan is entitled to protection under section 363(o) of the Bankruptcy Code because the loan constitutes a consumer credit transaction.[9]  This claim fails as a matter of law.

70.      As an initial matter, a declaratory judgment that retail borrowers' claims are entitled to protection under section 363(o) of the Bankruptcy Code is not ripe here.  Section 363(o) of the Bankruptcy Code provides:

> Notwithstanding subsection (f), if a person purchases any interest in a consumer credit transaction that is subject to the Truth in Lending Act or any interest in a consumer credit contract…, and if such interest is purchased through a sale under

---

[9]      The Debtors reserve all rights regarding whether any contracts under their Borrow program constitute consumer credit transactions.

this section, then such person shall remain subject to all claims and defenses that are related to such consumer credit transaction or such consumer credit contract, to the same extent as such person would be subject to such claims and defenses of the consumer had such interest been purchased at a sale under this section.

11 U.S.C. § 363(o).  Thus, for section 363(o) of the Bankruptcy Code to apply to a particular consumer credit transaction, a Debtor must seek approval to sell an interest in the consumer credit transaction.  Presently, the Debtors do not intend to seek such approval.  Rather, as set forth in the *Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and its Debtor Affiliates* [Docket No. 2358] (the "Plan") and the related *Debtors' Statement Regarding Plan Process* [Case No. 22-10964, Docket No. 2359], holders of "Retail Borrow Deposit Claims" (as such term is defined in the Plan) will have the opportunity to enter into a settlement agreement (pursuant to which an Electing Retail Borrower will release any and all claims with respect to such Claim, including any claim under section 363 of the Bankruptcy Code)[10] or have such Retail Borrower Deposit Claim set off or recouped against the applicable Retail Advance Obligation.  Thus, Plaintiff has failed to demonstrate that section 363(o) of the Bankruptcy Code is applicable.

71.     Even assuming section 363(o) of the Bankruptcy Code were applicable, however, such protections still would not apply.  As discussed above, Plaintiff's loan was liquidated on June 15, 2022, pursuant to the Loan Terms of Use and prior to the commencement of these chapter 11 cases.  Following the liquidation event, the Plaintiff no longer has a valid "consumer credit contract" to which section 363(o) of the Bankruptcy Code could apply.

---

[10]   See Exhibit 3 annexed to Exhibit B attached to the *Debtors' Motion for Entry of An Order (I) Authorizing and Approving Certain Bid Protections for the Proposed Plan Sponsor and (II) Granting Related Relief* [Case No. 22-10964, Docket No. 2151].

C.   Plaintiff's Loan Agreement Is Valid and Enforceable

72.   Plaintiff's eighth and ninth claims for relief[11] seek a declaratory judgment that Plaintiff's Loan Agreement is unenforceable.  Plaintiff alleges various theories of unenforceability, all of which fail as a matter of law.

73.   *First*, to the extent Plaintiff's declaratory judgment claim is predicated on the "fraudulent conduct described above," Amended Complaint, ¶ 71, that is facially improper.  A declaratory judgment seeking a declaration on the same rights or obligations that are subject to a parallel damages cause of action cannot be maintained.  *See In re Methyl Tertiary Butyl Ether Prods.*, 457 F. Supp. 2d 455, 466 (S.D.N.Y. 2006) ("Declaratory relief is generally inappropriate where duplicative of other claims in the action …."). Plaintiff "essentially seeks a judicial declaration that the principal factual allegations supporting his fraud claim are true," which is not a proper basis for declaratory relief.  *Koch v. Rodenstock*, No. 06 Civ. 6586, 2012 WL 5844187, at *12 (S.D.N.Y. May 9, 2012), *report and recommendation adopted*, 2012 WL 5845455 (S.D.N.Y. Nov. 19, 2012); *see id.* ("The requested declaratory relief should be denied, as Plaintiff misconstrues the purpose of a declaratory judgment action and improperly seeks declaratory relief based on allegations that are entirely duplicative of his fraud claim."). In any event, for the reasons stated above, Plaintiff has failed to adequately allege a factual basis to support his claims of fraud. *See supra* Section II.B.

74.   *Second*, Plaintiff alternatively alleges that the Loan Agreement is unenforceable because he was under the "duress of impossibility forcing loan default" as a result of Celsius not honoring his reverse margin call request and not allowing him to withdraw the remaining assets after liquidation.  Amended Complaint, ¶ 71.  Duress is a contract-formation defense, however,

---

[11]   Plaintiff does not include a seventh claim for relief.

not a basis for voiding a valid contract. *See, e.g.*, *Westbrooke v. Bellevue Hosp. Ctr.*, No. 16-cv-9845, 2019 WL 233611, at *3 (S.D.N.Y. Jan. 16, 2019) (dismissing claim that agreement was voidable due to duress where the plaintiff "has not alleged that she was subjected to a 'wrongful economic threat' that deprived her of her free will *when she executed the agreement*" (emphasis added)).  Because Plaintiff alleges no facts supporting a finding of duress at the time he entered the Loan Agreement that would invalidate that Agreement, his duress argument must fail.

75.     Plaintiff's claim of "impossibility" also rings hollow.  Amended Complaint, ¶ 71. Similar to duress, impossibility is a contract defense to excuse performance, not an affirmative basis to void a contract.  *See, e.g.*, *Axginc Corp. v. Plaza Automall, Ltd.*, 759 F. App'x 26, 29 (2d Cir. 2018) ("[U]nder New York law, impossibility … is a defense to a breach of contract action ….").  Even so, Plaintiff's claims of impossibility are limited to allegations of financial hardship and therefore insufficient as a matter of law.  *See Long v. De Feis O'Connell & Rose, P.C.*, No. 20 Civ. 2530, 2021 WL 257135, at *7 (S.D.N.Y. Jan. 26, 2021), *appeal dismissed* (May 27, 2021) ("[W]here impossibility . . . is occasioned only by financial difficulty or economic hardship, even to the extent of insolvency or bankruptcy, performance of a contract is not excused."); *Nat'l Enters. Inc. v. New Eng. Dev. II, Inc.*, 198 F.3d 234 (2d Cir. 1999) (holding there was no impossibility where the breach of a loan contract "resulted from the defendants' inability to make payments because the investment they made with the loan proceeds did not return sufficient funds for them to do so").

76.     Thus, Plaintiff's eighth and ninth claims for declaratory judgment must be dismissed for failure to state a claim.

IV.     **Plaintiff Is Not Entitled to an Accounting or Turnover of Collateral**

77.     Plaintiff's second claim for relief requests a judgment compelling an accounting and turnover of the loan collateral to Plaintiff.  As these are two separate claims, the Debtors address them individually.

78.     To state a claim for equitable accounting, a plaintiff must allege: "(1) a fiduciary relationship (2) entrustment of money or property (3) no other remedy and (4) a demand and refusal of an accounting." *Fuller Landau Advisory Servs. Inc. v. Gerber Fin. Inc.*, 333 F. Supp. 3d 307, 315 (S.D.N.Y. 2018).  "Standing alone, a contractual relationship does not give rise to fiduciary duties," however.  *Greenspan v. Allstate Ins. Co.*, 937 F. Supp. 288, 295 (S.D.N.Y. 1996). Because Plaintiff alleges no special consideration giving rise to a fiduciary relationship between the parties, he has no right to an equitable accounting.  *See* Amended Complaint, ¶¶ 37–39; *Fuller Landau*, 333 F. Supp. 3d at 315.

79.     Nor does Plaintiff establish any right to turnover of the remaining loan collateral. As a preliminary matter, Plaintiff has no right to seek turnover pursuant to section 542 of the Bankruptcy Code.  *See* 11 U.S.C. § 542; *In re Keenan*, 195 B.R. 236, 241 (Bankr. W.D.N.Y. 1996) ("A 'turnover' action, however, is an action under 11 U.S.C. § 542 to get a non-debtor to turn estate property over to the 'representative of the estate.' What standing do creditors have to seek a 'turnover order' against the representative of the estate?").  To the extent Plaintiff's claim instead seeks injunctive relief for the return of collateral, that claim fails as well. Generally, "in a pure contract money action, there is no right of the plaintiff in some specific *subject* of the action." *Credit Agricole Indosuez v. Rossiyskiy Kredit Bank*, 94 N.Y.2d 541, 545 (2000) (emphasis in original).  "In such situations, the 'plaintiff has an adequate remedy in the form of monetary damages, and injunctive relief is both unnecessary and unwarranted.'"  *Destiny USA Holdings, LLC v. Citigroup Glob. Mkts. Realty Corp.*, 69 A.D.3d 212, 217 (N.Y. App. Div. 2009) (quoting

*D&W Diesel v. McIntosh*, 307 A.D.2d 750, 751 (N.Y. App. Div. 2003)).  Here, Plaintiff has no viable breach of contract claim and therefore has no entitlement to damages.  *See supra* Section II.A.  However, even if such claims were viable, Plaintiff's appropriate relief would amount, at most, to an entitlement to money damages, not a relinquishment of estate property.

80.    Plaintiff's second claim for relief seeking an accounting and turnover of collateral must therefore be dismissed.

## <u>CONCLUSION</u>

81.    For the foregoing reasons, the Court should dismiss Plaintiff's Amended Complaint in its entirety as to all Debtors.

[*Remainder of Page Intentionally Left Blank*]

Washington, D.C.
Dated: April 12, 2023

/s/ T.J. McCarrick

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Judson Brown, P.C. (admitted *pro hac vice*)
T.J. McCarrick (admitted *pro hac vice*)
Leah Hamlin (admitted *pro hac vice*)
1301 Pennsylvania Avenue NW
Washington, D.C. 20004
Telephone:      (202) 389-5000
Facsimile:      (202) 389-5200
Email:          judson.brown@kirkland.com
                tj.mccarrick@kirkland.com
                leah.hamlin@kirkland.com

- and -

Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:          joshua.sussberg@kirkland.com

- and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:          patrick.nash@kirkland.com
                ross.kwasteniet@kirkland.com
                chris.koenig@kirkland.com
                dan.latona@kirkland.com

*Counsel to the Debtors and Debtors in Possession*

**<u>Exhibit A</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | |
| CHRISTOPHER LEE SHANKS, | ) | |
| | ) | |
| Plaintiff, | ) | Adversary Proceeding No. 23-01010 (MG) |
| v. | ) | |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*; | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## ORDER GRANTING DEBTORS' MOTION TO DISMISS
## THE AMENDED COMPLAINT

Upon the motion (the "Motion")[2] of the above-caption debtors an debtors in possession (collectively, the "Debtors") for entry of an order (this "Order") dismissing the Amended Complaint as more fully set forth in the Motion; and the Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United states District court for the Southern District of New York*, dated February 1, 2012, and the Court having found this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having found that venue of this proceeding and the Motion in this

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2] Capitalized terms used but not defined in this Order have the meanings given to such terms in the Motion.

district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the

relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and

other parties in interest; and the Court having found that the Debtors provided appropriate notice

of the Motion and the opportunity for a hearing on the Motion under the circumstances; and the

Court having reviewed the Motion; and the Court having determined that the legal and factual

bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the

proceedings had before the Court; and after due deliberation and sufficient cause appearing

therefore, it is HEREBY ORDERED THAT:

1.      The Motion is granted as set forth herein.

2.      Plaintiff's Amended Complaint is dismissed in its entirety.

New York, New York
Dated: _____, 2023                     _____
                                               THE HONORABLE MARTIN GLENN
                                               CHIEF UNITED STATES BANKRUPTCY
                                               JUDGE